

# NUMBER 13-12-00684-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI—EDINBURG

_____

## IN THE INTEREST OF A.V.M., A.S., AND A.S., MINOR CHILDREN

_____

**On appeal from the 377th District Court
of Victoria County, Texas.**

_____

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Perkes
Memorandum Opinion by Justice Perkes**

The trial court terminated A.V.'s ("mother") parental rights to three of her children: a daughter, A.V.M. and two younger sons, both with initials A.S.[1]  By three issues, the mother argues that the trial court's ruling should not stand because there was legally and factually insufficient evidence to support termination of her parental rights on the

---

[1]  In appeals involving the termination of parental rights, the Texas Rules of Appellate Procedure require the use of an alias to refer to a minor.  We may also use an alias "to [refer to] the minor's parent or other family member" to protect the minor's identity.  TEX. R. APP. P. 9.8.

grounds set forth in the trial court's judgment. In her fourth issue, she argues that the trial court erred in finding that termination is in the children's best interest. We affirm the termination of parental rights with respect to the mother. In the same cause, the trial court also terminated the parental rights of J.S. ("father"), the father of the two sons, A.S. and A.S. On appeal, the father raises five issues, challenging the trial court's failure to appoint legal counsel and to advise him of various rights. We affirm, in part, and reverse and remand, in part.[2]

## I. BACKGROUND

On May 3, 2011, the Department of Family and Protective Services ("the Department") filed an amended petition for protection of a child, for conservatorship and for termination. The Department sought to terminate the mother's parental rights; as well as the parental rights of J.S., the father of A.S. and A.S., the two younger children (sons); and J.M., the father of A.V.M., the oldest child (daughter). The pleading was

---

[2] Parental-termination appeals are accelerated appeals. *Id.* R. 28.4. Under Texas Rule of Judicial Administration 6.2(a), in an appeal like this one involving the termination of parental rights, this Court should "so far as reasonably possible, ensure that the appeal is brought to final disposition" within 180 days of the date the notice of appeal was filed. *See* TEX. R. JUD. ADMIN. 6.2. This appeal was initiated on October 22, 2012, making April 20, 2013 the 180th day; however, this Court did not occasion the delay in disposing of this appeal.

On January 4, 2013, the Clerk of this Court notified J.S.'s counsel that J.S.'s brief was due on December 21, 2012, but that it had not been filed. Despite a request that J.S.'s appellate counsel file an explanation within ten days concerning the failure to file a brief, no explanation was filed. The Clerk contacted J.S.'s counsel and was then informed that J.S. no longer desired to pursue this appeal; however, no motion to dismiss the appeal was filed. Accordingly, on February 26, 2013, this Court abated the present appeal and remanded the case to the trial court for a determination of, among other things, whether J.S. desired to prosecute this appeal. After a hearing on March 14, 2013, in which J.S. participated by telephone and appellate counsel appeared in person, the trial court entered findings of fact showing that J.S. does desire to prosecute this appeal. The trial court's findings of fact also set forth that J.S.'s appellate counsel was unable to obtain J.S.'s written authorization to dismiss the appeal because of J.S.'s movement within the Texas Department of Criminal Justice. By a letter to the Clerk of this Court dated March 12, 2013, the trial court judge advised this Court that J.S. was difficult to locate because of at least three movements within the prison system within a short span of time. J.S.'s appellate brief was finally filed April 5, 2013. The State's response brief was filed May 2, 2013.

supported by a caseworker's affidavit which stated that domestic violence was occurring between the mother and J.S. The three children were placed in foster care.

On August 11, 2011, the attorney ad litem for the children filed a motion alleging that the two younger children had been subjected to neglect and sub-standard foster care and recommended that the children be returned to their biological parents, asserting it was safer than the environment in which they had been placed. The two younger children were placed with their parents, but A.V.M remained in foster care. The court appointed special advocate ("CASA") noted that the father tested positive for marihuana and continued to have verbal altercations with the mother.

By February 14, 2012, all three children were returned home. The Department report noted that reunification was the goal and that J.S. was not living in the home. After a permanency hearing held in June 2012, the court noted that the mother had demonstrated some adequate and appropriate compliance with the service plan.

In September of 2012, after learning of an altercation that occurred between the mother and father, a Department caseworker met with A.V.M. at her school. The child confirmed that her mother and J.S. had gotten into an argument and that she witnessed J.S. choking her mother. A.V.M. also told the caseworker that J.S. was living at the home. The children were again removed from the home.

At trial, Ryan Salles, an officer with the Victoria Police Department, testified that in August 2012, he responded to a 911 call at the residence of the mother and J.S. The mother told the officer that J.S. assaulted her by pulling her hair, slamming her head against a wall, and strangling her. Salles arrested J.S. at the scene. According to Salles, the mother had redness on her neck. Officer Christopher Case also responded

3

to the 911 call. The mother told him that she was assaulted by J.S. He assisted the mother in completing an affidavit for a protective order.

The mother was called to testify. She stated that J.S. perpetrated violence in the family home. She acknowledged that after making the 911 call, she later recanted. The mother said that she lied to the police officers who responded to the 911 telephone call. She stated that J.S. did not strangle her, and she denied all of the things that she told Officer Case. She further testified that J.S. was not staying at their home when the Department came to pick up the children after the August altercation. She said that she had not seen J.S. since August 15, 2012. During the hearing, she admitted that she was pregnant.

Mark Hayden of the Victoria Police Department testified that he was aware of an earlier altercation between the mother and J.S. in April 2011. He arrested J.S. in September 2012 because J.S. was at the mother's home in violation of the protective order. After J.S. was taken away, the officer went into the house and noticed an ashtray on the counter that had "the end[s] of burned marijuana cigarettes." The mother told the officer that it belonged to J.S. and that she allowed him to smoke in the house.

Cynthia Tynes, a department caseworker, testified that the parents failed to complete their service plans. She did not believe that the domestic violence issues between the mother and J.S. were resolved. Tynes said she that believes there is a continuing threat to the children, that violence will occur, and that it is harmful to the children.

Rita Danes, the CASA advocate, said that after J.S. left the home, she did not see him there when she performed her monthly visits. Similarly, the mother's neighbor

testified that she had not seen J.S. at the home. The mother's aunt testified that the mother and children could reside with her if the court determined that the mother's parental rights would not be terminated.

The mother appeared at trial, testified, and was represented by appointed counsel. J.S. appeared at trial, representing himself without the benefit of counsel. He did not testify, but he did cross-examine witnesses and gave a brief closing argument. After the trial, the trial court entered an order terminating the parental rights of all three parents upon numerous grounds.[3]

## II. STANDARD OF REVIEW

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.). Termination must be supported by clear and convincing evidence. *In re J.L.,* 163 S.W.3d 79, 84 (Tex. 2005); *In re D.S.P.*, 210 S.W.3d at 778. This intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied). It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008); *see In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

---

[3] J.M., who is A.V.M.'s father, neither answered nor personally appeared at the trial. He was, however, represented by counsel at trial. He has not appealed the trial court's ruling.

5

Before terminating parental rights, the trier of fact must find that the parent committed an act prohibited by subsection 161.001(1) of the Texas Family Code and that termination is in the best interest of the child. *Id.* § 153.002 (West 2008); *id.* § 161.001; *see In re J.L.*, 163 S.W.3d at 84. The following non-exhaustive list of factors is considered in determining whether parental termination is in the child's best interest: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions committed by the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The party seeking parental termination is not required to prove all nine factors. *In re C.H.*, 89 S.W.3d at 27; *In re J.R.S.*, 232 S.W.3d 278, 284 (Tex. App.—Fort Worth 2007, no pet.) ("These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate."). In some cases, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27.

In reviewing the legal sufficiency of the evidence supporting termination, we "look at all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d at 85. We must assume that the trier of fact resolved

6

disputed facts in favor of its finding if it was reasonable to do so. *Id.* We must also consider undisputed evidence, if any, that does not support the finding. *Id.* at 86.

In reviewing the evidence for factual sufficiency, we must give due deference to the findings of the trier of fact and must not supplant the trial court's judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a fact finder could have reasonably formed a firm conviction or belief that the parent violated the relevant conduct provision of subsection 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the child. *In re C.H.*, 89 S.W.3d at 28. We need only determine if the evidence is legally and factually sufficient to support a single ground for termination and the trial court's finding that the termination is in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001.

### III. ANALYSIS OF MOTHER'S CLAIMS

#### A. Termination Under § 161.001(1) (D) and (E)

By her first three issues, appellant A.V. argues that the evidence is legally and factually insufficient to support termination under section 161.001(1) (D), (E), and (O) of the Texas Family Code. To support termination under section 161.001(1)(E), the Department was required to prove that the parent: "knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See* TEX. FAM. CODE ANN. §161.001(1)(E). To prove termination under section 161.001(D), there must be proof that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *See* TEX. FAM. CODE ANN. §161.001(1)(D).

7

Endangerment is defined as exposing to loss or injury, to jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under subsection (D), we examine the evidence related to the environment of the child to determine if the environment is the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied).

The parent's conduct does not necessarily have to be directed at the child. *See Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 195 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Conduct that subjects a child to a life of uncertainty and instability endangers a child's physical and emotional well-being. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). Abusive or violent conduct by a parent may produce an environment that endangers the physical or emotional well-being of the child. *In re J.T.G.*, 121 S.W.3d at 125. The requisite endangerment may be found if the evidence shows a parent's course of conduct that has the effect of endangering the child's physical or emotional well-being. *See Smith v. Sims*, 801 S.W.2d 247, 250 (Tex. App.—Houston [14th Dist.] 1990, no writ).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of appellant's conduct, including acts, omissions, or failures to act. *See* TEX. FAM. CODE ANN. § 161.001(1)(E); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("[A] child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards."); *see In re J.T.G.*, 121 S.W.3d at 125. Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary,

8

deliberate, and conscious course of conduct by the parent is required. *In re J.T.G.*, 121 S.W.3d at 125; *see also* TEX. FAM. CODE ANN. § 161.001(1)(E). The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *In re R.W.*, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).

If a parent abuses or neglects the other parent or children, that conduct can be used to support a finding of endangerment even against a child who was not yet born at the time of the conduct. *See In re J.O.A.,* 283 S.W.3d 336, 346 (Tex. 2009). It is not necessary that the offending conduct be directed at the child or that the child actually suffers injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). If the evidence shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child, a finding under Section 161.001(1)(E) is supportable. *Id.* at 534; *see Spangler v. Tex. Dep't of Protective & Regulatory Servs.*, 962 S.W.2d 253, 260 (Tex. App—Waco 1998, no pet.) (holding that the fact finder may consider the alleged abuse of another relative in considering whether a parent's conduct endangers a child); *Lucas v. Tex. Dep't of Protective & Regulatory Servs.*, 949 S.W.2d 500, 503 (Tex. App—Waco 1997, writ denied), *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002), (holding that a parent's abuse of a spouse can suffice to support termination of the abuser's parental rights).

Thus, the trial court could consider the history of abuse between the mother and the father for purposes of subsections (D) and (E), even if the children were not always present. *See Spangler*, 962 S.W.2d at 260. Similarly, violent acts directed towards one child can endanger other children not the direct victims of the physical abuse in

9

question.  *See Lucas*, 949 S.W.2d at 503; *Dir. of Dallas County Protective Servs. v. Bowling*, 833 S.W.2d 730, 733 (Tex. App.—San Antonio 2005, no pet.).

It is self evident that parents perpetrating violence towards certain members of the family threaten the emotional development and well-being of any child.  Here, the trial court had before it evidence of a continuing violent relationship that existed between the mother and J.S.  The trial court also had before it evidence that at least one of the children witnessed the beatings, as well as the mother's denials and recantations with respect to the violent behavior.  Evidence that a parent does not remove a child from, or allows a child to remain in a home where there is violent conduct, supports termination under section 161.001 (1) (D) and (E) of the Texas Family Code.  *See* § 161.001 (1)(D) and (E).  We believe that a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established.

## B.  Best Interest of the Children

Utilizing the *Holley* factors noted above, the evidence shows that the children were eight, two, and one at the time they were removed from the home.  There was evidence regarding at least two assaults by J.S. against the mother, and there was evidence that the assaults happened in the presence of the children.  A.V.M. told the caseworker that she feared returning home.  In A.V.M.'s interview, which is part of the record, she expressed the same concern.  The caseworker stated that the mother had not continued counseling and that the goals in the service plan were not met.  There was evidence of repeated violent events in the home, and the trier of fact could have taken into consideration the veracity of the mother's testimony.  The mother was in

denial with respect to the seriousness of the situation between J.S. and her, and she repeatedly lied either to police officers who came to her home or to the trial court. Under either scenario, it could rightfully have weighed into the trial court's decision to terminate her parental rights. Based on the foregoing, we conclude that a trier of fact could have formed a firm belief that termination of her parental rights was in the best interest of the three children subject to this lawsuit. *See* TEX. FAM. CODE ANN. §§153.002, 161.001; *see also Holley*, 544 S.W. 2d at 372.

The evidence is sufficient to support termination pursuant to sections 161.001(1)(D) and (E) of the Texas Family Code. *Id.* Thus, we will not address the remaining issue pertaining to section 161.001(1)(O) of the Texas Family Code. *See* TEX. R. APP. P. 47.1. We also conclude the trial court did not err in its determination that termination was in the best interest of the children. Accordingly, we overrule all of appellant A.V.'s issues on appeal.

## IV. Analysis of Father's Claims

### A. Underlying Facts

Appellant J.S. raises several issues regarding his lack of legal representation at the final hearing, after which his parental rights were terminated. Specifically, he argues the trial court abused its discretion by failing: (1) to appoint legal counsel; (2) to advise him of his right to counsel; (3) to determine whether he was voluntarily and knowingly waiving his right to counsel; (4) to advise of the dangers of self-representation; and (5) to inform him that he would not be granted any special consideration regarding the rules of evidence and procedure. *See* U.S. CONST. amend. VI, XIV.

11

After the Department filed its original petition for termination, J.S. filed an affidavit of inability to employ counsel. The trial court determined he was indigent and appointed an attorney to represent him. On November 7, 2011, however, his appointed counsel filed a motion to withdraw. The docket sheet reflects that the motion was heard and granted on December 9, 2011. On September 12, 2012, the Department filed another affidavit and order for protection, removing the children from the mother.

A trial was held, beginning September 24, 2012. J.S. represented himself, pro se. At the commencement of trial, the court asked if J.S. had an attorney; he answered that he did not. Counsel for the Department pointed out that J.S. had an attorney "who subsequently withdrew and [sic] it became aware to the Court that [J.S.] could afford to hire an attorney by his employment. Since that time he has not hired an attorney." There were no further inquiries into whether or not J.S. had the funds to retain counsel. Of note, at the time of final hearing, J.S. was incarcerated. Two days after the trial court filed its order terminating the parental rights of J.S., the trial court again recognizing that J.S. was indigent, appointed counsel to represent him in this appeal.[4]

## B. Standard of Review and Applicable Law

We review a trial court's determination of indigency under an abuse of discretion standard. *In re C.D.S.*, 172 S.W.3d 179, 184 (Tex. App.—Fort Worth 2005, no pet.). An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence. *Id.* Section 107.013 of the Texas Family Code provides that in a

---

[4] The Department attached to its appellate brief portions of a transcript of a permanency hearing apparently held on November 4, 2011, purporting to show J.S. was no longer indigent. However, neither the transcript of the permanency hearing nor the related clerk's records regarding J.S.'s appointed attorney's withdrawal were made a part of the appellate record in this cause. We do not consider attachments to briefs that are not formally included in the appellate record. *See Guajardo v. Conwell*, 46 S.W.3d 862, 864 (Tex. 2001); *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

suit filed by a governmental entity, as here, the court shall appoint an attorney to represent the interests of the indigent parent who responds in opposition to the termination. *See* Tex. Fam. Code Ann. §107.013 (West Supp. 2011). The language of the statute is mandatory.

The complete failure of a trial court to appoint counsel for indigent parents is reversible error. *In re M.J.M.L.*, 31 S.W.3d 347, 353–54(Tex. App.—San Antonio 2000, pet denied). In a termination case, a parent determined to be indigent is generally presumed to remain indigent unless evidence of a change in financial circumstances is presented to the trial court. *See* Tex. Fam. Code Ann. § 107.013(e); *see also* Tex. R. App. P. 20.1(a)(3) ("In a suit filed by a governmental entity in which termination of the parent-child relationship . . . is requested, a parent determined by the trial court to be indigent is presumed to remain indigent for the duration of the suit and any subsequent appeal, as provided by section 107.013 of the Family Code, and may proceed without advance payment of costs."). Termination proceedings must be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. *In re D.S.P.*, 210 S.W.3d at 778 (quoting Holick, 685 S.W.2d at 20). The Texas Supreme Court has held that this statutory right to counsel "embodies the right to effective counsel." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003).

The statute does not include the requirement that an indigent parent affirmatively request appointment of counsel when it appears that the parent opposes the termination suit. *In re J.M.*, 361 S.W.3d 734, 738 (Tex. App.—Amarillo 2012, no pet.). Further, there are no magic words to be "in opposition" to a suit for termination. *In re T.R.R.*, 986 S.W.2d 31, 37 (Tex. App—Corpus Christi 1998, no pet.).

The record does not show why counsel was not appointed for J.S. for the final hearing. While counsel for the Department hints that J.S. had funds from employment, it is undisputed that he was in jail at the time of the final hearing, and the record does not show that J.S. had funds to employ counsel at the time of the final hearing. No inquiries were made in that regard. The record does show, however, that he was represented earlier in the proceedings by appointed counsel, and that two days after the trial court ruled on the termination, it appointed appellate counsel for J.S.

At the very least, the trial court should have made an inquiry with respect to J.S's financial status and informed or advised him of his right to counsel. The natural rights existing between parent and child are of a constitutional dimension, and are to be strictly construed in the parent's favor. We hold the trial court abused its discretion in failing to appoint counsel and that such failure is reversible error.

## V. CONCLUSION

We affirm the termination order of the trial court with respect to A.V., the mother. We reverse the termination order with respect to J.S., the father, for appointment of an attorney ad litem consistent with section 107.013(a) of the Texas Family Code and remand for a new trial.

Gregory T. Perkes
Justice

Delivered and filed the
9th day of May, 2013.