**In the Interest of C.D.S., A Child.**

No. 2–04–189–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 11, 2005.

---

4. In light of our disposition of appellant's third point, we need not address his fourth point. *See* Tex.R.App. P. 47.1.

Doshier & Associates, P.C. and Robert J. Doshier, Granbury, for Appellant.

Gerry Williams and Lana Shadwick, Houston, for Appellee.

PANEL B: HOLMAN, GARDNER, and McCOY, JJ.

## OPINION

BOB McCOY, Justice.

### I. Introduction

In a single issue, Christy Amador ("Amador") complains that the trial court erred in failing to appoint for her an attorney ad litem, pursuant to Texas Family Code section 107.013(a), in proceedings that led to the termination of her parental rights to her child, C.D.S.

### II. Background

In April of 2003, Child Protective Services of Hood County received a report regarding the physical neglect of C.D.S. by

his mother, Christy Amador. Purportedly, Amador was using drugs, leaving C.D.S. with caretakers without their permission, and not bonding with her child, who had a diaper rash. An investigation into this report led to an admission by Amador that she had smoked marijuana while C.D.S. was in her care. In July 2003, Amador submitted to a urine test as part of a recommended outpatient treatment program, tested positive for "ice," which is a form of methamphetamine, failed to complete the eight-week program, leading to a recommendation that she go to in-patient rehabilitation. She began the program but subsequently decided to leave.

On August 6, 2003, the Texas Department of Family and Protective Services ("TDFPS") filed an original petition for protection of a child, for conservatorship and for termination in suit affecting the parent-child relationship. Served with a citation and a copy of this petition on August 6, Amador appeared at the courthouse to attend the emergency removal hearing scheduled for that date. The TDFPS was named temporary sole managing conservator of C.D.S. at that time, and a full advisory hearing was scheduled for August 14, 2003. Also on the 6th, Amador completed and filed with the court an application for appointment of counsel, attached to which was a declaration of financial inability to employ counsel, indicating that she was receiving temporary assistance for needy families in the amount of $167.00 and food stamps in the amount of $376.00, was unemployed, had no real or personal property, and had no cash and no property which could be liquidated for cash.

■ On August 8, 2003, the trial court judge found that Amador was not an indigent person too poor to employ counsel and denied her application for appointment of an attorney ad litem. An attorney ad litem was appointed to represent C.D.S. On August 12, 2003, a Court–Appointed Special Advocate ("CASA") volunteer was appointed as a special advocate for C.D.S. At an adversary hearing, held August 14, 2003, a caseworker testified that it was in the child's best interest to have the biological parents' parental rights terminated, which was the same testimony given by the CASA volunteer. At the hearing, Amador did not make another request or inquiry about counsel being appointed for her.[1] Amador testified at the hearing that, among other things, her present boyfriend (not C.D.S.'s father), with whom she lived, was on probation for burglary of a habitation and on one occasion they had used methamphetamines together. The court found that Amador was a parent who responded in opposition to termination[2] but that she was not indigent and as a result no attorney ad litem was appointed to represent her interests as a parent. On this same date, an urinalysis of Amador was negative for methamphetamine, cocaine, and marijuana.

On August 26, 2003, a temporary order following adversary hearing was issued wherein TDFPS was appointed temporary

1. TDFPS argues without citation to authority that Amador waived her right to appointed counsel by not re-urging her request at the hearing. We reject this argument and hold that once Amador filed her application for appointment of counsel, it remained before the court. For this same reason, we reject TDFPS's argument that on the day she requested counsel she had not appeared in opposition to termination, and therefore was not entitled to representation.

2. At the adversary hearing, Amador testified that "[a]ll I know is that I want [C.D.S.] home. I believe I can take care of him. I don't need to use drugs to have him in the home.... I will take anything just to have him home."

managing conservator for the minor. On September 23, 2003, a permanency plan and permanency progress report filed by TDFPS indicated, among other things, that (1) Amador was drug free at that time, but that her visit with C.D.S. demonstrated a lack of bonding, (2) she could not meet the basic needs of her family because of insufficient income or lack of resources, and (3) she needed assistance securing appropriate housing. Two days later, a report filed by the special advocate indicated that Amador stated that she could not go into recommended in-patient drug treatment because she had obtained a job at Big Lots; however, she did not have that job.

On January 23, 2004, a permanency plan and permanency progress report was filed again, indicating that Amador had tested negative for illegal drugs, but again stated that she had not been able to maintain proper housing or obtain stable employment. A report by the special advocate filed three days later also again indicated that Amador had not completed her drug treatment program, had not obtained a job, was unable to understand the development of C.D.S., and had missed visits with the child. On February 5, 2004, a permanency hearing was held, and the court found that Amador had not demonstrated adequate and appropriate compliance with her service plan and continued all previous issues ordered by the court regarding Amador and C.D.S. Eight days later, a family service plan was filed and indicated that Amador had not demonstrated the ability to maintain proper housing or to secure stable employment as of January 22, 2004. On May 14, 2004, another report filed by the special advocate found that (1) as of March 11, 2004, Amador's living situation was very temporary and very unsafe; (2) on March 25, she had decided to relinquish her rights to C.D.S. and scheduled a good bye visit for April 1; (3) she had changed her mind about the relinquishment on March 31, but then missed her regularly scheduled visit the following day; and (4) after a visit with C.D.S. on April 15, she indicated she was ready to sign the relinquishment papers.

On April 15, 2004, Amador executed an affidavit of voluntary relinquishment of parental rights to the TDFPS, and her parental rights were terminated pursuant to Texas Family Code, section 161.001(1)(K). TEX. FAM.CODE ANN. § 161.001(1)(K) (Vernon 2002). The trial court also found that termination was in the best interest of the child. *Id.* § 161.001(2).

On the day of the termination trial, Amador nodded in response to the trial court's inquiry that she was representing herself. She also told the trial court that she had signed an affidavit of relinquishment and that the affidavit bore her signature. She answered in the affirmative that she had read the affidavit of relinquishment, completely understood it, and executed it in the presence of the two witnesses under oath. The form documents included a waiver of citation and a notice of hearing as well as the relinquishment of her parental rights, and also a statement that the affidavit was executed freely and voluntarily. The CPS caseworker testified that Amador read the affidavit of relinquishment and seemed to understand it. There was also testimony that Amador understood the document because of prior termination proceedings in which she had been involved. Moreover, at the termination trial, Amador stated, "What I would like to say is I think it's in [C.D.S.]'s best interest and mine that he be adopted." At the adversary hearing, Amador had agreed that a child is endangered if the child lives in a home where drugs are bring used by family members or friends. Finally, the order terminating the parental rights of Amador was issued by the court on May

20, 2004. Two weeks later, Amador filed a notice of appeal in the district court complaining that she was denied representation by legal counsel. This appeal does not involve the legal or factual sufficiency of evidence to support the termination.

### III. Right to Counsel and Indigency

In her only issue, Amador complains that the trial court erred in failing to appoint an attorney ad litem to represent her interest, as an indigent parent responding in opposition to the termination of her parental rights, pursuant to Texas Family Code section 107.013(a)(1) that reads as follows:

> (a) In a suit filed by a governmental entity in which termination of the parent-child relationship is requested, the court shall appoint an attorney ad litem to represent the interests of:
>
> (1) an indigent parent of the child who responds in opposition to the termination....

TEX. FAM.CODE ANN. § 107.013(a)(1) (Vernon Supp.2004–05).

■■■ We review the trial court's determination of indigency under an abuse of discretion standard. To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.*

■■■ An abuse of discretion does not occur where the trial court bases its deci-

sions on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978), *reversed on other grounds, Davis v. Huey*, 620 S.W.2d 561 (Tex.1981); *see also Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex.2002).

■■■ TDFPS argues that at the adversary hearing on August 14, Amador had not appeared in opposition to the termination and had not filed an answer as of the date of the adversary hearing; therefore, the trial court's finding that she appeared in opposition was erroneous. Because Amador testified at the adversary hearing that she was opposed to the removal of her child, we find no merit in TDFPS's position.

■■■ The Texas Family Code does not favor us with a definition of "indigency." However, in a similar situation, a party may appeal as an indigent by filing an affidavit of indigency pursuant to Rule 20.1 of the Texas Rules of Appellate Procedure, and if this is contested, must prove his indigency, the test being whether by a preponderance of the evidence she demonstrates that she would "be *unable to pay costs if [s]he really wanted to and made a good faith effort to do so.*" *White v. Bayless*, 40 S.W.3d 574, 576 (Tex.App.-San Antonio 2001, no pet.) (emphasis supplied); *see also* TEX.R.APP. P. 20.1. "Indigent" is defined by Black's Law Dictionary as:

> (1) A poor person. (2) A person who is found to be financially unable to pay filing fees and court costs and so is allowed to proceed *in forma pauperis.*

BLACK'S LAW DICTIONARY 788 (8th ed.2004).

■■■ Having determined that there is a paucity of guidance as to the determina-

tion of indigency for purposes of this civil statute, we hold that the term "indigent" in section 107.013(a)(1) of the Texas Family Code means a person who does not have the resources, nor is able to obtain the resources, to hire and retain an attorney for representation in the termination case. In making this determination, the court can consider the purported indigent's income, source of income, assets, property owned, outstanding obligations, necessary expenses, number and ages of dependents, and spousal income available to the defendant. These considerations are consistent with the indigency determination made under the Fair Defense Act, contained in article 26.04(m) of the Texas Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 26.04(m) (Vernon Supp.2004–05).

## IV. Application

On August 6, 2003, Amador filed a Declaration of Financial Inability to Employ Counsel wherein she indicated she was receiving $376 in food stamps and $167 from temporary assistance for needy families but failed to indicate on the form whether this was weekly or monthly. She also indicated that because C.D.S. "is gone, this will be lowered." Receipt of public assistance benefits is prima facie proof of indigency. *Griffin Indus., Inc. v. 13th Court of Appeals*, 934 S.W.2d 349, 351 (Tex.1996); *Goffney v. Lowry*, 554 S.W.2d 157, 159–60 (Tex.1977). Also, Rule 145 of the Texas Rules of Civil Procedure, "Affidavit of Inability," reads in part,

A "party who is unable to afford costs" is defined as a person who is presently receiving a governmental entitlement based on indigency or any other person who has no ability to pay costs.

TEX.R. CIV. P. 145. Amador also indicated that she owned no property, had no money, had no relatives or friends that would loan her money to hire an attorney and

owed a "bondslady" $495. In its order for protection of a child in an emergency and notice of hearing, signed August 6, 2003, the court ordered that Amador,

furnish to the Department and the Court information sufficient to accurately identify the parent's net resources and ability to pay child support along with copies of income tax returns for the past two years, any financial statements, bank statements, and current pay stubs pursuant to Rule 196, Texas Rules of Civil Procedure and § 154.063, Texas Family Code.

There is no information in the record that this documentation was supplied to the department or court. An examination of the adversary hearing testimony held August 14, 2003 reveals that there was no discussion whatsoever concerning the financial status of Amador, nor does she request an attorney or complain to the court that the hearing was proceeding without representation for her. On August 26, 2003, the trial court signed an order entitled temporary order following adversary hearing wherein the court found that "Christy Dawn Amador is a parent who has responded in opposition to the termination of the parent-child relationship, but that Christy Dawn Amador is not indigent. Therefore, no attorney *ad litem* is appointed to represent the interests of this parent."

Applying the definition, previously enunciated, of "indigency," we hold that the trial court erred in failing to find that Christy Amador was indigent. The State also argues because there is not a timing requirement for the appointment of counsel, the failure to appoint counsel may not have been error. While acknowledging that section 107.013(a) of the Texas Family Code does not require the immediate ap-

pointment of an attorney ad litem,[3] we reject this argument since under the facts of this case by the time her parental rights were terminated pursuant to her voluntary relinquishment some eight months later on the eve of trial following numerous reports to the court involving Amador, counsel was required to be appointed. We sustain Amador's first issue.

## V. Error

The natural rights existing between a parent and his (her) natural child are of constitutional dimensions, and involuntary termination of parental rights statutes must be strictly construed in favor of the parent.... We hold that the trial court was required to appoint an attorney ad litem to represent appellant in this case, and the failure to do so constitutes reversible error.

*Odoms v. Batts,* 791 S.W.2d 677, 680 (Tex. App.-San Antonio 1990, no writ). We agree with this holding and with the holding of two other cases which have considered the question. *See In re M.J.M.L.,* 31 S.W.3d at 354 (complete failure of a trial court to appoint counsel for indigent parents constitutes reversible error) and *In re T.R.R.,* 986 S.W.2d 31, 37 (Tex.App.-Corpus Christi 1998, no pet.) (the trial court was required to appoint appellant an attorney ad litem in the termination proceeding; the failure to do so is reversal error and calls for a new trial).

## VI. Conclusion

Having sustained appellant's first point and determined that the error by the trial court is reversible, the judgment of the trial court is reversed and the case is remanded to the trial court for appoint-

ment of an attorney ad litem consistent with the Texas Family Code section 107.013(a) and a new trial.

---

**3.** One court has held that a six month delay in the appointment of an attorney ad litem was not a violation of this section, but in that case the parent was represented by appointed counsel for over a year prior to the actual trial date. *See In re M.J.M.L.,* 31 S.W.3d 347, 353–54 (Tex.App.-San Antonio 2000, pet. denied).