# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00164-CV

**J. E. and B. K., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NO. 2012-1417, HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

J.E. ("Jessica") and B.K. ("Brian") appeal from the trial court's order terminating their parental rights to their minor child, G.K., after the jury found that their rights should be terminated.[1] On appeal, Jessica asserts that (1) the trial court violated her due-process rights by limiting her time to present her case; (2) the trial court erred in allowing G.K.'s foster parents to amend their pleadings after the deadline set forth in the discovery control plan; (3) the evidence is insufficient to prove that a statutory ground for terminating Jessica's parental rights exists; and (4) the evidence is insufficient to overcome the presumption in favor of keeping Jessica as G.K.'s sole managing conservator. Brian argues, among other things, that the trial court erred in failing to provide him with court-appointed counsel. We affirm the trial court's judgment terminating Jessica's

---

[1] For the sake of convenience and privacy of the parties, we refer to G.K.'s parents, siblings, and other adult family members by fictitious names. *See* Tex. Fam. Code § 109.002(d).

parental rights, reverse the court's judgment terminating Brian's parental rights, and remand for further proceedings.

## BACKGROUND

In February of 2012, Jessica, Brian, and G.K. were living with Jessica's three older children, S.V. ("Sarah"), R.Q. ("Robert"), and G.Q. ("Grace"), as well as Jessica and Brian's infant son, M.K. ("Mark"). At the time, Sarah was thirteen years old, Robert was nine, Grace was seven, and G.K. was eighteen months old. Mark was born with a malignant tumor in his stomach and spent most of his life in the hospital.

The Texas Department of Family and Protective Services (the Department) became involved in this case on March 27, 2012. According to an affidavit attached to its Original Petition for Order to Participate in Services, the Department received a report from a hospital that Mark had multiple rib fractures, indicating potential abuse. Jessica told the Department that she did not know how Mark could have fractured his ribs. The Department initially investigated reports that Jessica was negligently supervising her children, but the allegations of neglect were "ruled out." Two months later, Sarah moved in with her father near Dallas and Jessica, Brian, and the other four children moved in with Brian's parents in Kyle, Texas.

On June 11, 2012, Mark died from apparent complications relating to his stomach cancer.[2] Following its investigation into Mark's death, the Department filed an Original Petition for

---

[2] An affidavit attached to the Department's Original Petition for Order to Participate in Services states that a subsequent autopsy determined that Mark's "bowels were twisted," possibly as a result of previous surgeries. There was no indication that Mark's death was the result of abuse or neglect.

2

Order to Participate in Services, seeking to compel Jessica and Brian to complete various parenting classes and psychological evaluations. The following month, the Department filed a "Supplemental Petition for Protection of Children, For Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship." The Department was named temporary managing conservator of all four of Jessica's children. Jessica agreed to have Sarah, Robert, and Grace placed with their respective fathers, and she and Brian agreed to have G.K. placed with Brian's sister, M.K. ("Maureen") and Maureen's husband, P.S. ("Phil").

The Department ultimately changed its plan for all four children from reunification to termination. The Department and Jessica settled the cases for Sarah, Robert, and Grace,[3] and the trial court severed those cases from the case involving G.K. A jury trial was conducted on the Department's petition to terminate Jessica's and Brian's parental rights to G.K.

At trial, Sarah testified that her life with Jessica, Brian, and her four siblings was "not a happy or healthy lifestyle." Sarah stated that she "took most of the responsibilities" of caring for her siblings since she was at least nine years old. This included making her siblings breakfast, packing their lunches, getting them ready for school, and changing their diapers. Sarah further explained that G.K. would remain in a "pack 'n play" in front of the television from the time that Sarah left for school until she returned home. When Sarah came home, she would take G.K. out of the pack 'n play, change her diaper usually for the first time since she left for school, and feed her. According to Sarah, Jessica was in her bedroom most of the time and rarely helped take care of

---

[3] Under the terms of these settlements, Jessica agreed to have the father of each child named the child's sole managing conservator in exchange for the Department dismissing its suits seeking to terminate her parental rights.

3

her children. Sarah also stated that Brian left for work early in the morning and would only help Sarah get the other children ready when she was having trouble.

Nancy Pratt, a therapist for a child advocacy center, testified that she treated Jessica's oldest son Robert shortly after he was removed from Jessica and Brian's custody. Pratt explained that Robert told her that Brian "chronically" abused him both physically and emotionally, often while Jessica was present. According to Pratt, Robert recalled that Brian "would grab the back of [Robert's] neck and squeeze it so hard that his legs would buckle beneath him and he would be crying on the ground." Pratt testified that this abuse caused emotional and psychological trauma for Robert. Furthermore, Pratt asserted that Jessica was an "absentee parent" who left Sarah and Robert to take care of their younger siblings.

The Department called Jessica's psychologist, who testified that she diagnosed Jessica with "grief; post-traumatic stress disorder, that's acute; major depressive disorder, recurrent severe without psychotic-features; [and] parent/child relational problem," but ruled out other personality disorders and did not find signs of substance abuse. The psychologist explained that Jessica was "very, very preoccupied with adversity she had experienced in childhood" which was "still very much affecting her functioning and suggested to me very intensive . . . longterm [sic] therapeutic needs."

Next, the Department called Jessica's counselor, who testified that Jessica had made "remarkable progress" throughout her treatment. According to the counselor, Jessica had actively participated in nearly fifty individual counseling sessions—even continuing treatments beyond those required by the Department—and had also participated in thirteen couples-counseling sessions with Brian. The counselor stated that Jessica was open and honest during these sessions; took

4

responsibility for her previous mistakes as a parent; and confronted the "depth of the depression that she had, probably for the majority of her life and what to do about it." Jessica's counselor recommended that Jessica and Brian be allowed unsupervised visits with their children throughout this case, and as a result of their treatments and Jessica's medication, the counselor believed that Jessica and Brian were ready to resume care of G.K.

The jury heard testimony that G.K.'s life was improving since she began living with Maureen and Phil. Sarah testified that when she saw G.K. shortly before trial, she was a "perfectly healthy, beautiful, little girl," and that G.K. was talking more, was more interactive, and "just seems happier" after being placed with Maureen and Phil. Maureen and Phil, who are intervenors in this case, testified that it took approximately three months to get G.K. to be comfortable outside of the pack 'n play and that she was now sleeping in a crib. Maureen and Phil also explained that they had to get G.K.'s immunizations up to date so that she could be enrolled in preschool. According to Phil, G.K. is "excelling" in her new life, and Maureen stated that G.K. is very energetic and happy in their home.

At the conclusion of testimony, the jury found that Jessica and Brian's parental rights to G.K. should be terminated. The trial court entered an order terminating their parental rights. This appeal followed.

## DISCUSSION

On appeal, Jessica asserts that (1) the trial court violated her due-process rights by limiting her time to present her case; (2) the court erred in allowing Maureen and Phil to amend their pleadings after the deadline set forth in the discovery control plan; (3) the evidence is

5

insufficient to prove that a statutory ground for terminating Jessica's parental rights exists; and (4) the evidence is insufficient to overcome the statutory presumption in favor of keeping Jessica as G.K.'s sole managing conservator. Brian argues, among other things, that the trial court erred in failing to provide him with court-appointed counsel. We will address each of these issues separately.

**Limiting Jessica's time to present her case**

In her first issue on appeal, Jessica asserts that the trial court abused its discretion in unreasonably limiting Jessica's time to present her case. Specifically, Jessica argues that the "court's refusal to properly allocate time to the parents prevented them from developing and presenting evidence important to their case." Jessica asserts that the "trial court's mishandling of the time, its failure to allow [Jessica's] expert to testify when he was available, and its hurrying along the parents' cases in chief" deprived her of due process and "likely caused the rendition of an improper judgment."

The record reflects that the trial court and the parties anticipated that this trial would take approximately eight to nine days. Although the trial court initially instructed the Department to complete its case by the fourth day, the Department did not rest until the morning of the seventh day. Jessica began her case in chief in the afternoon of the seventh day of trial, called a total of three witnesses, and rested midway through the morning of the eighth day. By this point, the trial court did encourage the parties to "move quickly" in their questioning of witnesses and the court sustained several objections to exclude repetitive testimony.

However, Jessica never objected to any of the time limitations imposed by the trial court. For example, Jessica did not object to the trial court's initial limitation on time for trial, request additional time to call more witnesses after the Department's case ran long, or object

6

to the trial court's instructions that the parties keep their questioning brief. *See State v. Reina*, 218 S.W.3d 247, 254 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (noting that State did not object to trial court allocating only one additional hour to present its case); *Schwartz v. Forest Pharm., Inc.*, 127 S.W.3d 118, 126–27 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (concluding party failed to preserve error as to court's time limit because he failed to object when limit was first imposed). If Jessica had complaints about the trial court's allocation of time, "it was incumbent upon [the complaining party] to make its objection known at the time." *Reina*, 218 S.W.3d at 254 (citing Tex. R. App. P. 33.1; *Schwartz*, 127 S.W.3d at 126–27; *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 600 (Tex. App.—Amarillo 1995, no writ)). Having failed to object to the time limits at trial, Jessica has failed to preserve this complaint for appellate review. We overrule Jessica's first issue on appeal.

**Sufficiency of the evidence to terminate Jessica's rights**

In her second through seventh appellate issues, Jessica asserts that the evidence is legally and factually insufficient to support termination of her parental rights in several respects. To terminate a parent-child relationship, there must be clear and convincing evidence that (1) the parent has engaged in conduct set out as statutory grounds for termination and (2) termination is in the child's best interest. *See* Tex. Fam. Code § 161.001(1)–(2); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). Jessica does not assert that the evidence is insufficient to establish that terminating her parental rights was in G.K.'s best interest. *See* Tex. Fam. Code § 161.001(2). Therefore, we consider only whether the evidence is sufficient to prove that Jessica engaged in conduct set out as a statutory ground for terminating her parental rights. *See id.* § 161.001(1); *Hanselman v. Texas*

7

*Dep't of Family and Protective Servs.*, No. 03-09-00485-CV, 2010 WL 5019549, at *4 (Tex. App.—Austin Dec. 9, 2010, no pet.) (mem. op.) (noting that appellate court need not review best-interest finding if not raised in appellant's brief).

*Standard of Review*

"The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In a termination case, we review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the fact-finder's determination and will uphold a finding if a reasonable fact-finder could have formed a firm conviction that its finding was true. *Id.* To give appropriate deference to the jury's conclusions, we must assume that the jury resolved disputed facts in favor of its finding if it could reasonably do so. *Id.* An appellate court should disregard evidence a reasonable fact-finder could have disbelieved or found incredible. *Id.*

When reviewing the factual sufficiency of the evidence in a parental termination case, we view all of the evidence in a neutral light and determine whether a reasonable fact-finder could form a firm belief or conviction that a given finding was true. *C.H.*, 89 S.W.3d at 18–19. We assume that the jury resolved disputed facts in favor of its finding if a reasonable fact-finder could do so, and we disregard evidence that a reasonable fact-finder could have disbelieved or found incredible. *J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable fact-finder could not have resolved the disputed evidence in favor of its finding and if that

8

disputed evidence is so significant that the jury could not reasonably have formed a firm belief or conviction. *Id.*

*Statutory ground for termination*

In her second through sixth issues on appeal, Jessica argues that the evidence is insufficient to establish any of the statutory grounds that the Department alleged supported terminating her parental rights. The Department alleged that Jessica's parental rights should be terminated pursuant to subsections (D), (E), (F), (N), and (O) of section 161.001(1) of the Family Code. Under these sections, the jury must have found clear and convincing evidence that Jessica:

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

(F) failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition;[4]

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the [Department] or an authorized agency for not less than six months, and;

---

[4] Jessica also asserts that the trial court erred in granting Maureen and Phil leave to amend their petition in intervention to include ground (F) because the deadline for amending pleadings established in the court's discovery control plan had passed. *See generally* Tex. R. Civ. P. 190.1–190.5 (establishing procedures for creating and modifying discovery control plan by court order). Because we conclude that other statutory grounds support terminating Jessica's parental rights, we need not determine whether the trial court erred in allowing Maureen and Phil to amend their petition after the deadline established in the discovery control plan.

(i) the department or authorized agency has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment; [or]

(O) failed to comply with the provision of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse and neglect of the child.

*See* Tex. Fam. Code § 161.001(1)(D)–(F), (N)–(O).

Only one statutory ground is necessary to support a judgment in a parental-rights-termination case. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, "we must affirm the termination order if the evidence is sufficient to support termination on any one of the grounds found by the district court." *Pruitt v. Texas Dep't of Family & Protective Servs.*, No. 03-10-00089-CV, 2010 WL 5463861, at *4 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.). Thus, we will consider whether the evidence is sufficient to support the jury's affirmative finding on subsection (D)—that Jessica knowingly allowed G.K. to remain in conditions or surroundings which endangered G.K.'s physical or emotional well-being.

Both subsections (D) and (E) require proof of child endangerment, i.e., exposing a child to loss or injury or jeopardizing a child's emotional or physical well-being. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Endangerment does not need to be established as an independent proposition, but may be inferred from parental misconduct alone. *Id.*

10

Subsection (D) requires proof that the environment in which the parent placed the child endangered the child's physical or emotional well-being, while subsection (E) requires proof that the cause of the endangerment was the parent's actions or failure to act. *Id.*

Sarah testified that even before Mark died, Jessica consistently remained in her bedroom throughout the day, leaving her thirteen-year-old daughter in charge of G.K. when G.K. was eighteen months old. G.K. was kept in a pack 'n play in the living room while Sarah was at school, and Sarah testified that G.K. often needed to be fed and changed as soon Sarah got home, usually for the first time since Sarah's departure for school. Also, Robert's psychiatrist testified that Jessica allowed Brian to physically and verbally abuse Robert in Jessica's presence without defending her child. This behavior is consistent with the psychiatrist's statement that Jessica was an absentee mother, possibly as a result of her prolonged chronic depression. Finally, there was testimony that while G.K. lived in Jessica and Brian's care, G.K. had not learned to speak and had only just learned to walk by the time she was two. However, once G.K. was placed with Maureen and Phil, she was taken out of the pack 'n play, cared for by adults, and soon developed the skills appropriate for her age and excelled in preschool.

Jessica's counselor testified that Jessica has made great strides in recognizing and addressing the underlying psychological basis for her previous behavior. The record reflects that Jessica has substantially completed the requirements of her family service plan, and we do not doubt that her efforts are a clear sign that Jessica loves her daughter. Nevertheless, subsection (D) is concerned with Jessica's previously placing G.K. in an environment that endangered her physical and emotional well-being, not Jessica's ability to avoid such environments in the future. *See In re A.C.B.*, 198 S.W.3d 294, 299 (Tex. App.—Amarillo 2006, no pet.) (noting that parent's willingness

11

to subsequently clean home does not controvert evidence that parent exposed child to unsanitary living conditions).

Considering the evidence in the light most favorable to the jury's finding, we find that a jury could reasonably have formed a firm conviction that Jessica knowingly placed G.K. in an environment which endangered her physical or emotional well-being. *See* Tex. Fam. Code § 161.001(1)(D). Therefore, we conclude that the evidence is legally sufficient to support the jury's finding that one of the statutory grounds for termination exists. *See A.V.*, 113 S.W.3d at 362. Similarly, considering the evidence in a neutral light, we determine that a jury could reasonably have formed a firm belief or conviction that Jessica knowingly placed G.K. in conditions that endangered her physical or emotional well-being. Therefore, we conclude that the evidence is factually sufficient to support the jury's finding that one of the statutory grounds for termination exists. *See J.F.C.*, 96 S.W.3d at 266. Having determined that the evidence is sufficient to support the jury's finding on one of the statutory grounds, we need not consider whether the evidence would support other grounds for termination. *See In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied). We overrule Jessica's second through sixth appellate issues.

*Preference for appointing parent as managing conservator*

In her seventh and final issue on appeal, Jessica asserts that the evidence is insufficient to overcome the strong presumption that it is in a child's best interest to appoint parents as joint managing conservators. Specifically, Jessica argues that section 153.131(b) of the Family Code codifies this strong rebuttable presumption, and that the presumption is only removed if there is a "finding of a history of family violence involving the parents." *See* Tex. Fam. Code § 153.131(b).

According to Jessica, there is no evidence that she has a history of family violence, and thus the presumption that she should be named G.K.'s sole managing conservator still exists. Furthermore, Jessica asserts that Maureen and Phil have not overcome this presumption, and thus the evidence is insufficient to establish that Jessica should not be named G.K.'s managing conservator.

The sections of the Family Code upon which Jessica relies are not applicable in this case. As we recently explained, the statutes cited by Jessica create a statutory preference for placement with a parent while a parent still retains her parental rights. *See Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 219–20 (Tex. App.—Austin 2013, no pet.) (citing Tex. Fam. Code §§ 262.114(c)(1), 263.306(a)(6), 263.404(a)(2); *In re D.O.*, 338 S.W.3d 29, 38–39 (Tex. App.—Eastland 2011, no pet.)). Given that the Department sought to terminate Jessica's parental rights, appointment of a managing conservator for G.K. was governed by section 161.207. *See id.* This section provides that if a court terminates the parent-child relationship of both parents, "the court shall appoint a suitable, competent adult, [the Department], a licensed child-placing agency, or an authorized agency as managing conservator of the child." Tex. Fam. Code § 161.207(a). Unlike section 153.131(b), section 161.207(a) does not, and logically should not, create a presumption that it is in a child's best interest to have a parent who has had her parental rights terminated named the child's managing conservator. *See id.*; *see also D.O.*, 338 S.W.3d at 38–39.

Thus, Jessica's assertion that Maureen and Phil were required to overcome a presumption that Jessica is the preferred managing conservator of G.K. is without merit. *See Spurck*, 396 S.W.3d at 220. We overrule Jessica's seventh issue on appeal. Having overruled Jessica's other appellate issues, we affirm that portion of the trial court's order that terminates Jessica's parental rights.

13

**Failure to provide Brian with appointed counsel**

On appeal, Brian asserts, among other things, that the trial court erred in failing to provide him with court-appointed counsel. Specifically, Brian argues that because he was indigent and opposed the termination of his parental rights, the trial court was required to provide him with counsel. *See* Tex. Fam. Code § 107.013(a)(1). Section 107.013(a) of the Family Code states that "[i]n a suit filed by a governmental entity in which termination of the parent-child relationship is requested, the court *shall* appoint an attorney ad litem to represent the interest of: (1) an indigent parent of the child who responds in opposition of the termination . . . ." *See id.* (emphasis added). This section provides indigent parents with a statutory right to be represented by court-appointed counsel in parental-termination-suits initiated by the Department.

To be entitled to court-appointed counsel, a "parent who claims indigence under Subsection (a) must file an affidavit of indigence in accordance with Rule 145(b) of the Texas Rules of Civil Procedure before the court can conduct a hearing to determine the parent's indigence under this section." *Id.* § 107.013(d). As one court explained, a parent's filing of an affidavit of indigency is "the act which would trigger the process for mandatory appointment of an attorney ad litem . . . ." *In re K.L.L.H*, No. 06-09-00067-CV, 2010 WL 87043, at *5 (Tex. App.—Texarkana Jan. 12, 2010, pet. denied) (mem. op.). Under Rule 145, "a defendant or the clerk may contest an affidavit [of indigency] . . . by filing a *written* contest giving notice to all parties." *See* Tex. R. Civ. P. 145(d) (emphasis added). If the Department or the clerk fails to challenge the parent's affidavit of indigency, "[i]t is well settled in Texas that '[a]n uncontested affidavit of inability to pay costs is conclusive as a matter of law.'" *Hager v. Apollo Paper Corp.*, 856 S.W.2d 512, 514 (Tex. App.—Houston

[1st Dist.] 1993, no writ) (quoting *Equitable Gen. Ins. Co. of Tex. v. Yates*, 684 S.W.2d 669, 671 (Tex. 1984)).

The record reflects that Brian filed an affidavit of indigency with the trial court on July 8, 2013—more than six months before the underlying jury trial began. There is nothing in the record to indicate that the Department or the court clerk contested Brian's indigency, let alone filed a written contest as required. *See* Tex. R. Civ. P. 145(d). Given that Brian's affidavit of indigency was not contested, he was indigent as a matter of law, and the trial court was required to provide him with appointed counsel.[5] *See Hager*, 856 S.W.2d at 514; *see also Odoms v. Batts*, 791 S.W.2d 677, 679–80 (Tex. App.—San Antonio 1990, no writ) (noting that trial court has mandatory duty to appoint counsel to indigent parent). Therefore, the trial court erred in failing to provide Brian with appointed counsel.

"Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, __ S.W.3d __, No. 12-0728, 2014 WL 4252270, at *16 (Tex. Aug. 29, 2014) (Lehrmann, J., concurring). In recognition of the seriousness of these cases, "the Texas Legislature has afforded indigent parents in state-initiated termination proceedings the right to counsel." *See id.* (internal citations omitted). "Complete failure of a trial court to appoint counsel for indigent parents constitutes reversible error."

---

[5] The Department asserts that because there is no transcript from the hearing in which the trial court provided Jessica, but not Brian, with court-appointed counsel, the appellate record does not provide a basis for determining whether the trial court abused its discretion in failing to appoint counsel to Brian. This argument is without merit because if either the Department or the court clerk wished to contest Brian's indigency, they had to do so in writing. *See* Tex. R. Civ. P. 145(d). Given that no one contested Brian's indigency in writing, Brian was indigent as a matter of law, and the trial court was required to provide him with counsel.

15

*In re V.L.B.*, __ S.W.3d __, No. 01-14-00201-CV, 2014 WL 4373567, at *5 (Tex. App.—Houston [1st Dist.] Sept. 4, 2014, no pet h.) (op. on reh'g) (citing *In re C.D.S.*, 172 S.W.3d 179, 185–86 (Tex. App.—Fort Worth 2005, no pet.); *In re T.R.R.*, 986 S.W.2d 31, 37 (Tex. App.—Corpus Christi 1998, no pet.); *Odoms*, 791 S.W.2d at 679–80).

Therefore, we sustain Brian's first appellate issue, reverse the portion of the trial court's order terminating Brian's parental rights, and remand this case to the trial court for the appointment of an attorney ad litem consistent with section 107.013 of the Family Code and a new trial on the Department's petition to terminate Brian's parental rights. *See C.D.S.*, 172 S.W.3d at 186 (adopting same appellate remedy for trial court's failure to provide indigent parent with counsel). We need not address Brian's remaining appellate issues.

## CONCLUSION

Having overruled Jessica's seven issues on appeal, we affirm the portion of the trial court's order terminating her parental rights. Having sustained Brian's first appellate issue, we reverse the portion of the trial court's order terminating his parental rights and remand this case to the trial court to provide Brian with appointed counsel and for a new trial.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed in Part; Reversed and Remanded in Part

Filed: September 10, 2014

16