

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00045-CV

_____

IN THE INTEREST OF I.C., A CHILD

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. DC89-FM2019-0248

Before Kerr, Birdwell, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant A.R. appeals from the trial court's termination of her parental rights to her daughter, I.C. In two issues, A.R. challenges the trial court's dismissal of her court-appointed attorney before the final hearing and the court's failure to appoint her an attorney to represent her at the final hearing. The record shows no basis for the trial court's dismissal of A.R.'s court-appointed attorney, and the Department concedes error. Accordingly, we reverse.

## I. BACKGROUND

In August 2019, the Department of Family and Protective Services filed its "Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent–Child Relationship," regarding I.C. The petition was filed in the 89th District Court of Wichita County. The Department asked to be appointed temporary managing conservator; to have a determination of the parentage of I.C.'s alleged father, N.C.; and to be appointed as permanent sole managing conservator if I.C. could not be safely reunified with either parent or permanently placed with a relative or other suitable person. That same month, A.R. filed an affidavit of indigency, and in October 2019, A.R. was appointed an attorney ad litem by the associate judge to whom the case had been referred. *See* Tex. Fam. Code Ann. § 107.013.

In November 2020, the Department filed a motion to dismiss A.R.'s court-appointed attorney. The Department stated that A.R. "does not meet the qualifications for court-appointed counsel under §107.013, Texas Family Code by the attached

2

affidavit completed by [A.R.] and as from her testimony in" a companion case filed by the Department. The Department did not specify why it believed that A.R. no longer qualified as indigent, but it attached to the motion the affidavit of indigency that A.R. had allegedly filed in that companion case.[1] In that affidavit, A.R. stated that she currently had a job at Wal-Mart making $11.50 an hour and paid $500 a month in rent; that she could not borrow money to hire a lawyer; that she had no vehicle, furniture, appliances, television, stereo, jewelry, or cash; and that she neither paid nor received child support. A.R. did not state how many hours a week she worked.

On November 23, 2020, the associate judge signed an order dismissing A.R.'s attorney.[2] The order had no detailed findings or statement of good cause. *See id.* § 107.016(3)(C); Tex. R. Civ. P. 145(h). Instead, the associate judge generically stated that "the [c]ourt finds that [A.R.] a) is not indigent; and/or b) there has been a material or substantial change in [A.R.'s] financial circumstances; and c) he [sic] has the resources to hire and retain an attorney for representation in this case."

At the final termination hearing held on January 27 and 29, 2021, the Department began its case by telling the associate judge,

---

[1]Although the Department stated that the affidavit had been filed in a different case, someone wrote the cause number for this case on the form.

[2]For reasons not clear from the record, although A.R.'s appointed attorney was dismissed by the trial court in November 2020, the attorney approved the form of a January 27, 2020 decree terminating N.C.'s parental rights.

Your Honor, I believe there's few housekeeping details that need to be taken up prior to actually getting into the meat of today's hearing. There is a—[A.R.] has a companion case in Cause Number DC89-CP2020-2230. That case came in back in November of 2020. At that point in time [A.R.] had filled out an indigency request. At that time she had indicated that she was employed at $11 an hour at Wal[-]Mart—I'm sorry, 11.50 an hour and that she was working a full 40 hour work week.

At this point in time I think we—which put her over the cut line for [a] court appointed attorney. As she was ineligible for a court appointed attorney in a companion case, that made her ineligible for a court appointed attorney in this case.

I would like to proceed in questioning [A.R.] as to her current finances.

A.R. testified that she had recently left her Wal-Mart job for a better job at a call center but that although she had gone through the hiring process and was "affiliated" with the new employer, she had not yet started the work; she was not currently on unemployment; she had moved in with her brother and was not paying rent; and she paid $40 monthly for her cell phone, which her brother helped her pay for. She further testified that she had not received a stimulus check and did not know why; she had some furniture that she could sell if she wanted to; she had some family members from whom she could borrow money; her brother worked as a welder and she did not know how much money he earned in a month; she did not own any vehicles; and she had no other resources or assets. At the conclusion of this testimony, the associate judge stated, "I still find [A.R.] is capable of hiring an attorney, and we may proceed."

The hearing concluded on January 29, and the associate judge took the matter under advisement. On February 5, 2021, the associate judge signed her report in the

form of a decree terminating A.R.'s parental rights. *See* Tex. Fam. Code Ann. § 201.011(a). The same day—before the time had expired for A.R. to request a trial de novo, *see* Tex. Fam. Code Ann. § 201.015(a)—the presiding judge signed the decree. *See id.* §§ 201.013–.014. A.R. now appeals.

## II. DISCUSSION

### A. MANDATORY REQUIREMENTS FOR ATTORNEY AD LITEM FOR INDIGENT PARENT

"Termination of parental rights is traumatic, permanent, and irrevocable." *In re D.T.*, No. 20-0055, 2021 WL 2603695, at *3 (Tex. June 25, 2021). Recognizing the "fundamental nature of the interests at stake in parental-termination cases," Texas law requires that when a government entity files suit to terminate a parent–child relationship, an indigent parent who opposes the suit is entitled to appointed counsel. *Id.* (citing Tex. Fam. Code Ann. § 107.013).

The Family Code explains the process a trial court must follow in deciding whether to appoint an attorney for a parent or to dismiss an appointed attorney. If a parent claims indigence, the trial court must require the parent to file an affidavit of indigence under Civil Procedure Rule 145(b). Tex. Fam. Code Ann. § 107.013(d); Tex. R. Civ. P. 145(b). The trial court may conduct a hearing to determine the parent's indigence, and at that hearing, the court may consider evidence in addition to the parent's affidavit, "including evidence relating to the parent's income, source of income, assets, property ownership, benefits paid in accordance with a federal, state, or local

public assistance program, outstanding obligations, and necessary expenses and the number and ages of the parent's dependents." Tex. Fam. Code Ann. § 107.013(d); *see also In re G.S.*, No. 14-14-00477-CV, 2014 WL 4699480, at \*19 (Tex. App.—Houston [14th Dist.] Sept. 23, 2014, no pet.) (mem. op.); *see generally In re C.D.S.*, 172 S.W.3d 179, 184–86 (Tex. App.—Fort Worth 2005, no pet.) (stating that for purposes of Section 107.013, indigent "means a person who does not have the resources, nor is able to obtain the resources, to hire and retain an attorney for representation in the termination case").

If the trial court finds that the parent is indigent under Section 107.013, the parent is presumed to remain indigent for the duration of the suit and through any appeal unless the parent, the parent's attorney ad litem, or the governmental entity's attorney files a motion for reconsideration and the court determines "that the parent is no longer indigent due to a material and substantial change in the parent's financial circumstances." Tex. Fam. Code Ann. § 107.013(e). And counsel appointed for an indigent parent remains that parent's attorney until the earliest of

> (A)   the date the suit affecting the parent–child relationship is dismissed;

> (B)   the date all appeals in relation to any final order terminating parental rights are exhausted or waived; or

> (C)   the date the attorney is relieved of the attorney's duties or replaced by another attorney after a finding of good cause is rendered by the court on the record.

*Id.* § 107.016(3). A finding of good cause must be articulated in the record. *Id.*; *cf. B.B. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-15-00082-CV, 2015 WL 2183581, at *2, *5 (Tex. App.—Austin May 5, 2015, no pet.) (mem. op.) (describing trial court's order explaining reasons for finding of good cause and for allowing parent to proceed pro se at trial); *cf.* Tex. R. Civ. P. 145 (providing that a trial court may not order a party who has filed an affidavit of indigence to pay costs without making required, detailed findings).

## B. INSUFFICIENT BASIS FOR DISMISSAL OF A.R.'S ATTORNEY

In A.R.'s first issue, she argues that the trial court abused its discretion by dismissing her court-appointed attorney prior to the final hearing. In her second issue, she argues that the trial court abused its discretion in failing to appoint her an attorney to represent her at the final hearing after hearing testimony establishing her indigency. In its brief, the Department concedes that the trial court abused its discretion in dismissing A.R.'s attorney and that the error was not harmless, and it asks this court to reverse the termination order and remand for a new trial. We agree.

The associate judge initially determined that A.R. was indigent and appointed her an attorney ad litem. The Family Code permitted the Department to ask the trial court to reconsider whether a material and substantial change in A.R.'s financial circumstances had occurred and whether A.R. was thus no longer indigent. *See* Tex. Fam. Code Ann. § 107.013(e). But the associate judge's order granting the Department's dismissal motion was a generic form order that contained no detailed

findings about A.R.'s ability to pay and did not articulate any other good cause for discharging her court-appointed attorney. *See id.* §§ 107.013(e), .016(3); *see also* Tex. R. Civ. P. 145.

Further, the record evidence does not support a finding of a material and substantial change in A.R.'s financial circumstances. A.R.'s affidavit of indigence from the companion case, which the Department attached to its motion to dismiss A.R.'s attorney, suggests that the basis for dismissing the attorney was that A.R. had obtained a job making $11.50 an hour. But the associate judge could not properly determine that A.R. had the ability to pay solely based on her hourly wage. That is not the standard for determining indigency; for at least seventy years, a party's indigency has been determined by looking at whether "the record as a whole show[s] by a preponderance of the evidence that the applicant would be unable to pay the costs . . . if he [or she] really wanted to and made a good-faith effort to do so."[3] *Pinchback v. Hockless*, 164 S.W.2d 19, 20 (Tex. [Comm'n App.] 1942) (order); *see also In re A.M.*, 557 S.W.3d 607, 610 (Tex. App.—El Paso 2016, no pet.) (stating that in trial court's determination of whether father in termination proceeding could afford to pay costs, the court

---

[3]Even if the associate judge concluded that this hourly wage disqualified A.R. from public-assistance benefits and therefore believed that A.R. could not be indigent, proof that a person does not receive public assistance does not establish a lack of indigency. Instead, the court must look at the whole record and determine whether the person can afford to pay costs. *See In re C.D.S.*, 172 S.W.3d at 184–86; *cf.* Tex. R. Civ. P. 145; *Goffney v. Lowry*, 554 S.W.2d 157, 159–60 (Tex. 1977) (holding that a party's receiving public-assistance benefits is prima facie evidence that the party is indigent).

8

improperly focused exclusively on the father's income and disregarded the father's expenses; thus, "the trial court did not properly consider whether [the father] *can afford to pay costs*"); *In re C.D.S.*, 172 S.W.3d at 184–86. The affidavit from A.R.'s companion termination case did not show what A.R. made in a week, that she had assets she could sell, or what her debts or other financial obligations were, if any. *See In re A.M.*, 557 S.W.3d 607, 610 (Tex. App.—El Paso 2016, no pet.) (stating that a person may have sufficient cash on hand to pay filing fees "but the person cannot afford the fees if paying them would preclude the person from paying for basic essentials"); *cf. Leachman v. Stephens*, No. 02-13-00357-CV, 2016 WL 6648747, at *12 (Tex. App.—Fort Worth Nov. 10, 2016, pet. denied) (mem. op.) (stating, in case involving an allegedly indigent inmate, that "Rule 145 defines indigence in terms of the ability to pay and not in terms of the absence of any money").

Even considering the Department's evidence at the start of the final hearing, we conclude that the record does not support a determination that A.R. was no longer indigent. A.R. testified that she had been unemployed for two weeks because she found a new, better job but had not yet started it. *See Gonzalez v. Gonzalez*, No. 08-01-00453-CV, 2003 WL 1759587, at *3 (Tex. App.—El Paso Apr. 3, 2003, no pet.) (mem. op.) ("The court should consider an individual's present ability to pay costs rather than her future, more speculative ability."). She had no vehicle that she could sell or use for collateral. A.R. stated that she had furniture that she could sell, but there was no testimony about the condition or estimated value of that furniture and no testimony

9

that A.R. had any other assets. *See Goffney*, 554 S.W.2d at 159 (stating that rules allowing indigent parties to proceed without paying costs "do not require the litigant to borrow money [that] cannot be repaid except by depriving the litigant of the necessities of life"). A.R. could pay her $40 cell phone bill only with her brother's help. A.R. testified that she paid no rent while living with her brother, but the Department did not ask if she had any other debts or other non-household bills to pay other than her cell phone. Although A.R. testified that she could borrow money from her brother, it is well-established that a trial court must consider only the alleged indigent party's financial condition, not those of her relatives or friends. *See In re S.V.*, Nos. 05-16-00519-CV, 05-16-00520-CV, 2016 WL 2993515, at *2 (Tex. App.—Dallas May 20, 2016, no pet.) (mem. op.) (citing *Allred v. Lowry,* 597 S.W.2d 353, 355 (Tex. 1980), for the proposition that an alleged indigent party "is not required to show family or friends are unable to pay the applicant's costs"); *cf. B.B.*, 2015 WL 2183581, at *2, *5 (rejecting the appellant's argument that by filing a motion requesting that a privately retained attorney be appointed to represent her, she had given the trial court notice that she was no longer indigent, and stating that nothing in the record showed that she was no longer indigent or that a party had asked the trial court to reconsider the court's previous indigency finding).

As the fact-finder, the associate judge did not have to find A.R.'s testimony credible. *See Bell Helicopter Textron, Inc. v. Burnett*, 552 S.W.3d 901, 913 (Tex. App.—Fort Worth 2018, pet. denied). But the associate judge had to have sufficient evidence on

which to base a finding of a material and substantial change or other good cause for dismissing A.R.'s attorney. Other than A.R.'s affidavits and testimony, the record contains no other evidence about A.R.'s financial circumstances at the time of the final hearing or on the date that the trial court had previously dismissed her attorney.

Because nothing in the record showed a justifiable basis for dismissing A.R.'s attorney, the trial court's dismissal of A.R.'s attorney was reversible error. *See In re J.F.*, 589 S.W.3d 325, 334 (Tex. App.—Amarillo 2019, no pet.); *In re C.D.S.*, 172 S.W.3d at 186. Accordingly, we sustain A.R.'s two issues.

## III. CONCLUSION

Having sustained A.R.'s two issues, we reverse the decree of termination and remand the case to the trial court for a new trial on the Department's petition.

/s/ Brian Walker

Brian Walker
Justice

Delivered: August 19, 2021

11