NO. 07-11-00339-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

FEBRUARY 1, 2012

_____

IN THE INTEREST OF J.M., A CHILD

_____

FROM THE COUNTY COURT AT LAW  NO 1 OF RANDALL COUNTY;

NO. 8816-L-1; HONORABLE JAMES ANDERSON, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

The opinion and judgment of January 30, 2012 have been withdrawn and this opinion is issued in its place.

Appellant, Melissa K. (Melissa), appeals the judgment of the trial court terminating her parental rights to the child, J.M.  For the reasons we state below, we reverse the judgment of the trial court and remand the matter to the trial court for further proceedings.

Factual and Procedural Background

On January 11, 2010, the State of Texas through the Texas Department of Family and Protective Services (Department) filed an original petition for protection,

conservatorship, and to terminate the parental rights of Melissa to both V.K. and J. M.[1]

That same day, pursuant to an Order for Protection, J.M. was picked up and placed in

the care of the Department.

In the initial petition, the Department requested that:

19.1 Indigent Parent

If a parent responds in opposition to this suit affecting their parent-child relationship and appears without an attorney, the Department requests that the Court determine whether the parent is indigent. If the Court determines that the parent is indigent, the appointment of an attorney ad litem to represent the interests of that parent is required by § 107.013, Texas Family Code.

The record reflects that on January 25, 2010, the trial court held an adversary

hearing, in which Melissa agreed to the terms of the order which provided that the

Department would be named the temporary managing conservator of J.M. and Melissa

would be appointed temporary possessory conservator. Because Melissa agreed to the

temporary orders the trial court also entered an order deferring a finding regarding the

appointment of an attorney ad litem for Melissa.

Melissa had been arrested on January 5, 2010, and according to the judgment in

the criminal case, which was made a part of this record, stayed in jail until February 24,

2010. The judgment adjudicating Melissa guilty reflects that she was incarcerated again

on March 9, 2011, and remained in jail until May 2, 2011, when the judgment reflects

she was released until her adjudication hearing on May 25, 2011, when she was

---

[1]Melissa subsequently agreed that the Department should be named managing conservator of V.K. while she would be named possessory conservator. V.K.'s status is not part of this appeal.

adjudicated guilty and sentenced to serve six years confinement in the Institutional Division of the Texas Department of Criminal Justice.

Beginning with the Initial Child's Service Plan filed on March 1, 2010, and continuing throughout most of the period prior to the final hearing, reunification was the stated goal of the Department's reports to the trial court. Melissa participated in the review conferences held until October 4, 2010. Thereafter, Melissa did not participate in any further review conferences or hearings concerning J.M. until the final hearing on June 14, 2011, on the Department's petition seeking termination.

At the time of the final hearing, Melissa was in the Randall County Detention facility pending transfer to the ID-TDCJ to serve her six-year sentence. The record reflects that after the case was called for trial, the trial court inquired of Melissa, "And Melissa [ ], are you ready?" Melissa answered, "Yes." After verifying that Melissa agreed to the Department being named as managing conservator of her daughter, V.K., the trial court further inquired, "And so the issue before the Court during the trial is in regards to your son, [J.M.]. Is that correct?" Melissa then answered, "Yes." No further inquiries of Melissa were made by the court. During the presentation of the Department's case, exhibit numbered "Petitioner's Exhibit 65" was introduced into evidence. "Petitioner's Exhibit 65" was the Judgment Adjudicating Guilt against Melissa. Attached to that judgment, and referred to on the face of the judgment, was a bill of costs from the District Clerk of Randall County. One of the items listed on the bill of costs was attorney's fees of $1,600. From this entry, the logical deduction is that

3

Melissa was found to be indigent for purposes of the criminal prosecution, shortly before the termination hearing.

During the termination trial, Melissa participated to the extent of trying to object to some of the 64 photographs that were introduced and in cross-examination of the witnesses for the Department who were testifying against her parental interest. However, most of these efforts were met with objections that were sustained. At the conclusion of the trial, the court terminated Melissa's parental rights to J.M.

Following the judgment of termination of Melissa's parental rights to J.M., the trial court appointed an attorney ad litem to represent Melissa on appeal. Melissa's appeal brings forth two issues. First, Melissa argues that the trial court committed reversible error in terminating her parental rights without providing appointed trial counsel. Second, Melissa argues that the trial court erred when it failed to advise her of her right to a trial by jury. We reverse.

Appointment of Attorney Ad Litem

The issue before the Court in this appeal is does a trial court err in failing to appoint an attorney ad litem to represent a parent when the parent at issue has made no formal request for appointment of an attorney. The Department opines that without such a request there is no duty to appoint an attorney ad litem. Further, the Department contends that the failure of Melissa to notify the trial court she was indigent by the presentation of any type of affidavit of indigency would support the action of the trial court in not appointing an attorney ad litem. Melissa contends that failure to make any

4

inquiry about whether Melissa desired an attorney ad litem was error of a constitutional magnitude that requires the Court to reverse and remand the case for another trial.

Initially, we observe that courts have held that the rights that inure in the parent-child relationship are of a constitutional dimension.  See Stanley v. Illinois, 405 U.S. 645, 658, 31 L.Ed 2d 551. 92 S.Ct. 108 (1972); In re G.M., 596 S.W.2d 846, 846 (Tex. 1980).  Texas has recognized that among the rights belonging to a parent involved in a termination proceeding is the right to representation.  See TEX. FAM. CODE ANN. § 107.013(a) (West Supp. 2011).[2]  Section 107.013(a) is as follows:

MANDATORY APPOINTMENT OF ATTORNEY AD LITEM FOR PARENT

In a suit filed by a governmental entity in which termination of the parent-child relationship is requested, the court shall appoint an attorney ad litem to represent the interests of: An indigent parent of the child who responds in opposition to the termination.

The Department contends that since the record is void of any request for an attorney, the trial court did not err by failing to appoint an attorney.  This interpretation means that, even had Melissa filed a written answer to the suit for termination of her rights to J.M., the trial court would not have had a duty to inquire about her status as an indigent.  To support this proposition, the Department cites the Court to Ybarra v. Tex. Dep't of Human Servs., 869 S.W.2d 574, 580 (Tex.App.—Corpus Christi 1993, no writ). According to the Department, Ybarra stands for the proposition that failure to appoint counsel would not be error if the parent failed to make a request for such appointment

---

[2] Further reference to the Texas Family Code Ann. will be by reference to "section ___," or "§ ___."

5

of counsel. The actual quotation from the Court of Appeals is a bit different. The Corpus Christi court actually said, after a general statement about the requirement to appoint counsel, "However, the trial court did not err in failing to appoint counsel under these circumstances: Ybarra did not request appointed counsel **and was represented by retained counsel at trial.**" Id. at 580 (emphasis added). In the case before the Court, Melissa was not represented by retained counsel at trial. The Department then cites the Court to Odoms v. Batts, 791 S.W.2d 677, 678 (Tex.App.—San Antonio 1999, no writ), for the proposition that it is error to deny appointment of counsel when the parent filed an answer and alerted the court that he was an indigent. Likewise, the Department cites the case of In re T.C.B. for the same proposition. See No. 08-02-00515-CV, 2003 Tex. App. LEXIS 6792, at *4-*5, (Tex.App.—El Paso Aug. 7, 2003, no pet.) (not designated for publication). In In re T.C.B. the father had filed an answer challenging the termination and had requested the appointment of an attorney. From these citations, it is clear that when a parent files an answer contesting the termination and requests appointment of counsel, the trial court must, at a minimum, conduct an inquiry into whether the parent is indigent and, if the court finds that the parent is indigent, must appoint counsel. However, none of the cases directly address the question before this Court.

What is the duty of the trial court when the parent appears in person to contest the termination but does not affirmatively request appointment of counsel? Does the failure to file a written answer mean that the parent is not responding in opposition to the termination? A review of the record in this case provides some of the answer. Initially, the petition filed by the Department was requesting termination of the parental

6

rights of Melissa to both V.K. and J.M.; however, at the latter stages of the proceeding the Department sought permanent managing conservatorship of V.K. with Melissa having the status of possessory conservatorship with limited possession and access to the child. On the day of the final hearing regarding J.M., the trial court entered into the following discussion with Melissa about V.K.:

> The Court: It is my understanding, [Melissa], and please correct me if I'm wrong, that you are in agreement with your daughter - - with the Department being named managing conservator of your daughter, and you possessory conservator.
>
> Melissa: Yes.
>
> The Court: And that she remains in care. Is that correct?
>
> Melissa: Yes.
>
> The Court: Okay. And so the issue before the Court during the trial is in regards to your son, [J.M.]. Is that correct?
>
> Melissa: Yes.

From this record, it is apparent to the Court that Melissa was responding in opposition to the termination. See § 107.013(a). If the Department's position is that she did not appear in opposition to the termination, that position finds no support in the record.

The Department further contends that Melissa answered ready for trial when asked by the trial court if she was ready to proceed. That announcement of ready, coupled with no affirmative request for appointment of an attorney would mean, according to the Department, that the trial court committed no error in failing to appoint her an attorney ad litem. Such a contention is an effort to place an additional requirement on section 107.013(a), that being that when a parent appears in opposition

7

to a termination *and* requests an attorney.  However, such a requirement is not present in the statute.  See § 107.013(a).  Melissa agreed to the naming of the Department as permanent managing conservator of V.K. and further agreed with the trial court that the only issue before the court was the status of J.M.  There appear to be no magic words that are required to be "in opposition" to a request for termination.  See In re T.R.R., 986 S.W. 2d 31, 37 (Tex.App.—Corpus Christi 1998, no pet.) (concluding that parent's statement "I want my rights" was sufficient to trigger a required inquiry into indigency status.).

The position of the Department is further undermined by the record in this matter. The record affirmatively represents that Melissa was brought from the jail to the courthouse for the hearing.  The record also shows that Melissa had been adjudicated guilty and sentenced to six years confinement in the ID-TDCJ.  "Petitioner's Exhibit 65", an exhibit introduced by the Department, contained the bill of costs from the criminal prosecution which reflected Melissa had an appointed attorney.  Testimony revealed that at the time the children were placed in the custody of the Department under an emergency order Melissa was receiving benefits from the State in the form of a Lone Star Card for food but that the card was depleted.

Additionally, the original petition filed by the Department contained a request that the trial court inquire about the indigency of any parent who appeared in opposition to termination without an attorney, thus applying to the exact scenario we find in this record.

8

Finally, the trial court was aware of this issue. This can be ascertained by a review of the trial court's order following the initial adversary hearing on January 25, 2010. In paragraph numbered 4 of that order, at 4.1, the court stated:

> The Court defers its finding regarding an attorney ad litem for [MELISSA], because [MELISSA] has not appeared in opposition to this suit or has not established indigency.

To place this paragraph in context, Melissa agreed to the order at that time and signified her agreement by signing the order. That presents a far different dynamic than that reflected above at the initial hearing. In the final hearing, Melissa appeared in opposition to the termination of her parental rights to J.M. We see her position in opposition from both the lack of a voluntary relinquishment document and Melissa's efforts on the day of the hearing.

In the final analysis, the Department's position is that, because Melissa did not ask for the appointment of an attorney at or before the final hearing, then we must assume she voluntarily waived any rights to appointed counsel under § 107.013(a). See § 107.013(a). We have reviewed all of the reported cases and find none with a factual pattern that answers the question. The record is devoid of any indication that Melissa knew of her rights to claim indigency and request counsel. However, in drawing an analogy to criminal trials, we know that a criminal defendant who is otherwise entitled to appointed counsel can waive his rights to counsel. See TEX. CODE CRIM. PROC. ANN. art. 1.051(g) (West Supp. 2011). However, such waiver must be voluntarily and intelligently made with knowledge of the dangers and disadvantages of proceeding to trial without counsel. Id.

In consideration of the recognized constitutional dimensions of the parent-child relationship, we see no reason why the trial court should not make an inquiry into whether Melissa desired to proceed without benefit of counsel. See Stanley, 405 U.S. at 658; In re G.M., 596 S.W.2d at 846. Accordingly, we sustain Melissa's first issue and find that the trial court committed reversible error by proceeding without appointing an attorney to represent Melissa.

Having sustained Melissa's first issue, we will not address the second issue.

Conclusion

Having sustained Melissa's first issue, we reverse and remand this matter to the trial court for a new trial.

Mackey K. Hancock
Justice

10