# IN THE SUPREME COURT OF TEXAS

════════════
No. 12-0728
════════════

IN THE INTEREST OF K.M.L., A CHILD

════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE NINTH DISTRICT OF TEXAS
════════════════════════════════════════════

JUSTICE LEHRMANN, joined by JUSTICE DEVINE, concurring.

I join the Court's opinion finding legally insufficient evidence that K.M.L.'s mother knowingly and voluntarily relinquished her parental rights. As to K.M.L.'s father, John, I agree with the Court that the court of appeals' judgment should be reversed, though I do not entirely agree with the Court's reasoning.

The Court invalidates the jury's verdict terminating John's parental rights because the record does not reflect that he received notice of the trial in accordance with Texas Rule of Civil Procedure 245. ___ S.W.3d at ___. But while the Court correctly holds that John did not receive proper notice of trial, it incorrectly concludes that John did not waive the lack of notice. I agree with the court of appeals that a party who does not receive proper notice of trial waives error by, as John did, attending trial and failing to object to the lack of notice or request a continuance. ___ S.W.3d at ___ (citing *In re J.(B.B.)M.*, 955 S.W.2d 405, 407–08 (Tex. App.—San Antonio 1997, no pet.)). Further, the fact that the State had served John with a subpoena is immaterial, as he testified that he had appeared voluntarily and would have appeared regardless of the subpoena.

John's failure to preserve error does, however, cast light on issues the Court does not reach—whether the trial court erred in failing to appoint counsel to represent John or admonish him of his right to counsel. I would reach these issues and hold that, in light of indigent parents' statutory right to appointed counsel in state-initiated termination proceedings in Texas, the trial court erred in failing to admonish John of that right, rendering him unable to meaningfully exercise it.

Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the "death penalty" of civil cases. On multiple occasions, the U.S. Supreme Court has afforded a high degree of constitutional respect to a parent's interest in maintaining the parent-child relationship. *See, e.g.*, *Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 843–45 (1977); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Prince v. Massachusetts*, 321 U.S. 158, 165 (1944). Specifically, the Supreme Court has recognized the fundamental nature of a parent's right to raise one's child, as an extension of the freedom of personal choice in family matters. *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925). Recognizing the significance of the rights at stake in parental termination cases, the State of Texas affords unique protections to parents whose rights are in danger of being terminated. *E.g.*, *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980) (holding that, due to the constitutional import of the parent-child relationship, facts in parental termination cases must be proved by clear and convincing evidence, as opposed to a mere preponderance).

In line with these protections, the Texas Legislature has afforded indigent parents in state-initiated termination proceedings the right to counsel. TEX. FAM. CODE §§ 107.013, 262.201; *In re B.G.*, 317 S.W.3d 250, 253–54 (Tex. 2010) ("An indigent parent is entitled to appointed counsel in

2

parental rights termination cases, and that statutory right . . . embodies the right to effective counsel."
(citation and internal quotation marks omitted)). As discussed below, this right, regardless of its
source, is meaningless without the ability to assert it.

A defendant who has a *constitutional* right to appointed counsel, such as a criminal
defendant, has a corresponding right to be admonished of that right and the dangers of waiving it.
*See Faretta v. California*, 422 U.S. 806, 835 (1975). This ensures that defendants who choose to
waive their right to counsel do so knowingly and intelligently. *Id.* at 835–36. After all, a
constitutional entitlement is hollow if the protected individual is unable to assert it because she does
not know it exists. *See Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

Unlike in the criminal context, a defendant in a state-initiated parental termination proceeding
has no absolute constitutional right to assistance of counsel. *Lassiter v. Dep't of Soc. Servs. of
Durham Cnty., N.C.*, 452 U.S. 18, 33 (1981). The Supreme Court held in *Lassiter* that, as the danger
of an indigent litigant's being deprived of her personal liberty diminishes, so too does the
presumption that she has a right to counsel. *Id.* at 26–27. The Court went on to apply the three-
factor test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), to determine whether due
process required appointment of counsel for the indigent parent in that case. 452 U.S. at 27. These
factors include (1) the private interests at stake, (2) the government's interest, and (3) the risk of
error. *Id.* Though the Supreme Court declined in *Lassiter* to find a constitutional right to counsel
(and, in turn, a right to admonishment), the Court notably went on to point out that "[a] wise public
policy . . . may require that higher standards be adopted than those minimally tolerable under the
Constitution." *Id.* at 33. In explaining that "[state] courts have generally held that the State must

3

appoint counsel for indigent parents at termination proceedings," *id.* at 30, the Court not only

applauded but encouraged such additional protections. *See id.* at 34 ("Most significantly, 33 States

and the District of Columbia provide statutorily for the appointment of counsel in termination cases.

The Court's opinion today in no way implies that the standards increasingly urged by informed

public opinion and now widely followed by the States are other than enlightened and wise.").

As noted above, Texas is among the states that statutorily afford indigent parents the right

to appointed counsel in state-initiated termination proceedings. *See* TEX. FAM. CODE § 107.013. At

the time the underlying suit was filed, the statute stated in pertinent part: "In a suit filed by a

governmental entity in which termination of the parent-child relationship is requested, the court shall

appoint an attorney ad litem to represent the interests of . . . an indigent parent of the child who

responds in opposition to the termination." Act of May 27, 2003, 78th Leg., R.S., ch. 262, § 1, 2003

Tex. Gen. Laws 1173, 1180, *amended by* Act of May 20, 2013, 83d Leg., R.S., ch. 810, § 2, 2013

Tex. Gen. Laws 2026, 2026 (codified at TEX. FAM. CODE § 107.013(a)).[1] While the statute did not

expressly provide for admonishment, the Legislature has since amended section 262.201 of the

Family Code to add an express admonishment requirement. Act of May 20, 2013, 83d Leg., R.S.,

ch. 810, § 9, 2013 Tex. Gen. Laws 2026, 2029 (codified at TEX. FAM. CODE § 262.201(a-1)).

Pursuant to section 107.013, "[a] parent who claims indigence under Subsection (a) must file

an affidavit of indigence . . . before the court can conduct a hearing to determine the parent's

---

[1] As the Court notes, the statute also requires appointment of counsel for indigent parents in a state-initiated suit requesting appointment of a conservator for a child. That requirement was contained in subsection (c) of the statute at the time this suit was filed, but is now contained in subsection (a). Act of May 29, 2005, 79th Leg., R.S., ch. 268, § 1.06, 2005 Tex. Gen. Laws 621, 623, *repealed by* Act of May 20, 2013, 83d Leg., R.S., ch. 810, § 11, 2013 Tex. Gen. Laws 2026, 2030.

indigence under this section." TEX. FAM. CODE § 107.013(d). It is undisputed that John never requested appointed counsel under this provision. It is also undisputed, however, that he was not admonished of his right to counsel under this provision. Assuming that, under *Lassiter*, John had no constitutional right to counsel in this case, admonishing an indigent parent of his right to counsel is no less crucial when it originates in a state statute rather than the U.S. Constitution. A parent who is not admonished of that right cannot intelligently exercise or waive it. *Cf. Faretta v. California*, 422 U.S. 806, 835 (1975) (holding in the criminal context that the right to counsel carries with it the implied right to admonishment).

Without the right to admonishment, many indigent parents whose parental rights are in peril face a no-win situation: they have a statutory right to counsel if they follow the proper procedures to establish their indigence, but they have no right to be admonished of their right to counsel upon a finding of indigence and thus no way of ensuring they follow the required procedures to exercise it. That is exactly what happened in this case. John was entitled to appointed counsel if he demonstrated that he was indigent, but was not admonished of that right and in turn did not follow the statutory procedures to invoke it. Indeed, the trial judge told John at trial that, had he established his indigence earlier, he would have been entitled to an appointed attorney, but that "[i]t's a little late for that now." The trial court thus affirmatively recognized John's right to counsel while simultaneously denying it. Had John been admonished before trial that indigent parents have a statutory right to counsel, he would have had a chance to exercise, or waive, that right. As the court of appeals stated in *In re J.M.*:

5

> In the final analysis, the Department's position is that, because [Mother] did not ask for the appointment of an attorney at or before the final hearing, then we must assume she voluntarily waived any rights to appointed counsel under § 107.013(a). . . . The record is devoid of any indication that [Mother] knew of her rights to claim indigency and request counsel. However, in drawing an analogy to criminal trials, we know that a criminal defendant who is otherwise entitled to appointed counsel can waive his rights to counsel. However, such waiver must be voluntarily and intelligently made with knowledge of the dangers and disadvantages of proceeding to trial without counsel.

361 S.W.3d 734, 738–39 (Tex. App.—Amarillo 2012, no pet.) (internal citations omitted). Similarly, in this case "[t]he record is devoid of any indication that [John] knew of [his] rights to claim indigency and request counsel." *Id.* at 738.

These concerns are magnified by the fact that John failed to receive notice of trial. As noted above, I believe that John waived error on this ground, which only highlights the importance of representation by counsel that John was denied. Unlike a pro se litigant, an attorney would have been aware of the need to object and request a continuance in order to avoid waiver problems. Instead, without the guiding hand of counsel, John participated in the trial without objection.

I would hold that, even before it was amended to do so expressly, the Texas Family Code required trial courts to admonish parents (1) of their right to appointed counsel in state-initiated parental termination cases, and (2) that such right is contingent upon a finding of indigence. The Texas Legislature has taken pains to afford these parents more expansive protections than those minimally guaranteed under the U.S. Constitution. It is well established that while the federal government sets the floor for individual rights, the states set the ceiling. *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex. 1986); *see also Davenport v. Garcia*, 834 S.W.2d 4, 14–15 (Tex. 1992). And the State of Texas affords indigent parents the right to counsel in parental termination cases, even

6

when federal due process does not. But an indigent parent who is not informed of his right to counsel, or how to exercise it, effectively has no right to counsel in the first place. Because John was given no meaningful opportunity to invoke, much less to intelligently waive, his right to appointed representation in these critically important proceedings, I agree with the Court that the court of appeals' judgment, which affirms the trial court's judgment terminating John's parental rights, must be reversed. Accordingly, I respectfully concur in the Court's judgment, but I cannot join Part III of the Court's opinion.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** August 29, 2014

7