

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00187-CV

IN THE INTEREST OF J.B., J.B., S.B., AND A.R.B., CHILDREN

On Appeal from the 242nd District Court
Castro County, Texas
Trial Court No. B9583-1304, Honorable Edward Lee Self, Presiding

November 6, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellants, the father and the mother, appeal the termination of their parental rights to their children, J.B., J.B., S.B. and A.R.B.[1]  For the reasons that follow, we will reverse and remand that portion of the order terminating the mother's parental rights and will otherwise affirm the trial court's order.

## Background

In April 2013, the Texas Department of Family and Protective Services filed an original petition for protection of a child, for conservatorship, and for termination in a suit

---

[1] Throughout this opinion we identify the children by initials as required by appellate rule 9.8(b)(1)(A).  *See* TEX. R. APP. P. 9.8(a),(b)(1)(A).

affecting the parent-child relationship. The pleading named J.B., J.B., and S.B. as the children involved in the suit and identified the father and the mother as respondents. It alleged reasonable efforts would be made to eliminate the need for removal of the children and to enable their return to the father and the mother. If reunification of the children and their parents could not be safely accomplished, the Department requested appointment of a third-party permanent sole managing conservator. If reunification with either parent could not be achieved, the Department requested termination of that parent's parental rights. Concerning court-appointed legal representation for the father and the mother, the pleading stated:

> If a parent responds in opposition to the suit affecting their parent-child relationship and appears without attorney, the Department requests that the Court determine whether the parent is indigent. If the Court determines that the parent is indigent, the appointment of an attorney *ad litem* to represent the interests of that parent is required by § 107.013, Texas Family Code. . . .

The trial court conducted an adversary hearing in May 2013. The order deferred consideration of a court-appointed attorney for the father and the mother since neither had "appeared in opposition to this suit" or established indigency. The order named the Department temporary managing conservator for the three children. The father and the mother were ordered to submit for psychological evaluation and participate in counseling, parenting classes, and a program of drug and alcohol assessment and testing. The three children were placed with their maternal grandmother.

A family service plan evaluation, filed June 3, 2013, expressed the Department's permanency goal of family reunification by May 13, 2014. An evaluation filed October 24, 2013, stated the permanency goal for each of the children was "Alt Family:

2

Relative/Fictive Kin, Adoption." The same permanency goal for each child was stated in an evaluation filed March 11, 2014. The "target date" for achieving the goal was May 1, 2014.

According to an order signed June 27, 2013, the father and the mother appeared without counsel at a status hearing. The docket sheet indicates the mother testified. The order states the goal of the Department's service plans was to return the children to their parents.

A fourth child, A.R.B., was born to the parents on August 20, 2013. At the time of birth the mother and the infant each tested positive for methamphetamines and amphetamines. The Department initiated a separate suit on behalf of A.R.B. by filing a petition for protection, conservatorship, and termination. A.R.B. was removed from the father and the mother and placed with his paternal great aunt. In September 2013, the court ordered the suit concerning A.R.B. consolidated into the existing suit concerning the other three siblings.

A status hearing and permanency hearing were conducted during October 2013. The resulting orders state the mother appeared and announced ready. A corresponding docket sheet entry indicates the mother appeared *pro se* at the hearings.

A December 2013 permanency plan and progress report to the trial court *inter alia* stated the permanency plan was "relative adoption" with the concurrent goal of "relative conservatorship." Elsewhere the document stated should the father and the mother "not work any services and fail to completely eliminate the Department's concerns and reasons for removal, the Department will seek termination of their

parental rights . . . ." It was further stated that the trial court did not approve the goal of reunification at the October 2013 permanency hearing.

The court conducted a permanency hearing on January 9, 2014. According to the docket sheet entry for the hearing, the father and the mother appeared *pro se*. The court found the parents had not demonstrated adequate and appropriate compliance with the service plan. The permanency hearing order of that day set May 19, 2014, as the dismissal date pursuant to Family Code section 263.306(13). The order set the case for trial on May 1, 2014.

On April 11, 2014, the Department filed an amended petition for protection, conservatorship, and termination of the four children. The instrument reiterated the previous pleading's allegations regarding possible reunification, third-party permanent sole managing conservatorship, and termination. It also included the notice concerning mandatory appointment of an attorney at litem for the father and the mother under section 107.013.

On the morning of May 1, the trial court convened a hearing. The mother was not present. Early in the proceedings the Department revealed that the mother was incarcerated in the Castro County jail.[2] The caseworker thought the mother was detained for non-payment of "court fines." The father later testified his wife was held on

---

[2] By her appellate brief, the mother asks that we take judicial notice of the fact that the Castro County jail and the courtroom where the May 1 hearings were underway are in the same building. While we decline the invitation to exercise judicial notice, we note also that in its brief the Department does not challenge the accuracy of the fact asserted. TEX. R. APP. P. 38.1(g).

a charge of theft by check. Neither the court nor a party sought the mother's personal appearance or appearance by another means.

The father appeared at the hearing with retained counsel. In an oral motion for continuance, his attorney stated she was retained the previous afternoon and did not file an answer because she did not have the cause number. Asked why her client delayed retaining her, counsel responded, "I believe it was a money issue from what I've understood from the client." The trial court decided to proceed with a permanency hearing and carry the motion for continuance to the conclusion of the hearing.

The sole witness for the permanency hearing was the Department's assigned caseworker. According to the caseworker, the father tested positive for methamphetamines on January 28, 2014. The Mother's test result was inconclusive but she admitted using methamphetamines. The caseworker added both parents acknowledged in writing using methamphetamine at a time around February 10. The mother checked herself into a drug rehabilitation facility in Abilene on April 3 and completed the program on April 30. Since the January permanency hearing, the father participated in counseling but performed no other services. He did not enroll in an inpatient substance abuse treatment program for fear of losing the job he obtained in December 2013. The previous week the father provided a urine screen and hair strand analysis for drugs. According to the caseworker, the urinalysis was negative and the hair strand test results were not yet available. At the conclusion of evidence, the father's counsel orally renewed the request for a continuance. The court denied the continuance and immediately convened the final hearing.

The Department's first witness was the family-based safety services (FBSS) worker on the case. Intake was January 2013 after the Department had a report of substance abuse by the father and the mother. A plan of services was developed for the family. By April 2013, inpatient substance abuse treatment for the father and the mother was recommended. The mother used methamphetamines while pregnant with A.R.B., and as noted she and the baby tested positive at birth.

A Department special investigator and the caseworker also testified during the final hearing, both telling the court of the parents' drug use. The caseworker indicated the couple completed some of the services ordered but continued using drugs throughout the case. She agreed that as recently as February 2014 the father and the mother admitted methamphetamine use.

The father testified he had believed the children would be returned after completion of inpatient treatment. When this did not occur, he said, he grew depressed and relapsed. After rehab he secured housing but it lacked utilities. At that time he lost his car and "came back [from rehab] with nothing." At the time of trial, the father testified he had no car. When asked about his [later] drug use the father replied, "I didn't have any money." As for why the mother was incarcerated on the morning of trial the father stated, "I'm worried financial [sic] right now. I'm trying to pay off a lot of things right now, probation, attorneys." He indicated he had not yet "bail[ed] her out" for financial reasons but would do so as soon as he was paid.

At the conclusion of the hearing, the trial court orally rendered judgment terminating the parental rights of the father and the mother. According to the written

order signed May 5, the mother, "although duly and properly notified, did not appear and wholly made default," and the father, appearing in person and by attorney of record, "announced ready." The order states the court found the father and the mother each violated subsections (D), (E), (O), (P) of Family Code section 161.001(1) and termination of parental rights was in the best interest of J.B, J.B., and S.B. As for A.R.B., the order states the court found both parents violated subsections (D),(E), and (P) and termination was in the child's best interest.

The father and the mother filed notices of appeal.[3] On a finding of indigence, appellate counsel was appointed for each.

## Analysis

## The Mother's Issues

### *Failure to Appoint Counsel*

In her first issue, the mother argues the trial court denied her statutory and constitutional protections by not appointing counsel for her at trial.

In *In re J.M.*, this court reversed a judgment terminating a mother's parental rights when the trial court proceeded to trial without inquiring whether she desired to proceed without benefit of counsel. 361 S.W.3d 734, 739 (Tex. App.—Amarillo 2012, no pet.); *see In re A.V.M.*, No. 13-12-0684-CV, 2013 Tex. App. LEXIS 5788 (Tex.App.—Corpus Christi–Edinburg May 9, 2013, pet. denied) (holding, on facts presented, "[a]t

---

[3] Neither the father nor the mother challenge the sufficiency of the evidence supporting the court's best interest and predicate ground findings.

the very least, the trial court should have made an inquiry with respect to [parent's] financial status and informed or advised him of his right to counsel").

For suits filed on or after September 1, 2013, in which a child is taken into possession by the Department, the Legislature has mandated that trial courts inform a parent not represented by counsel that the parent has the right to be represented by an attorney, and that if the parent is indigent and appears in opposition to the suit, the parent has the right to a court-appointed attorney.  TEX. FAM. CODE ANN. § 262.201 (West 2014) (requiring such admonitions before commencement of full adversary hearing; also providing for completion and filing of affidavit of indigence; evidence on indigence and postponements of adversary hearing).

Our supreme court reversed a judgment terminating the parental rights of both parents in its recent opinion in *In re K.M.L.*, ___ S.W.3d ___, 2014 Tex. LEXIS 765, 57 Tex. Sup. Ct. J. 1357 (Aug. 29, 2014).  The court reversed the judgment as to the father's parental rights because he did not receive notice of the trial setting and did not waive notice by appearing at the trial under subpoena.  *Id.* at *2, 44.  In her concurring opinion, joined by another member of the court, Justice Lehrmann addressed the trial court's failure to appoint counsel for the father or admonish him of his right to counsel, issues not reached by the court's opinion.  Recognizing that the 2013 statutory amendment expressly requiring admonition of parents in state-initiated termination cases of their right to appointed counsel if indigent was not applicable to the case, the concurring justices nonetheless would have reversed the trial court's judgment because he was never informed of his right to counsel "or how to exercise it."  *Id.* at *53 (Lehrmann, J., concurring).  In the course of its discussion the concurring opinion

8

quoted this court's *J.M.* opinion, in which we noted "[t]he record is devoid of any indication that [the parent] knew of [her] rights to claim indigency and request counsel." *Id.* at *51 (quoting *J.M.*, 361 S.W.3d at 738).

The Department argues against application in this case of our holding in *J.M.*, contending the cases are distinguishable. It asserts nothing in the present record demonstrates the trial court was on notice of the mother's indigency prior to the beginning of the final hearing. We disagree with the assertion, for several reasons. First, we said in *J.M.* that the trial court was aware of the unresolved issue of the parent's indigency because its order following the initial adversary hearing contained language deferring its finding regarding appointment of an attorney ad litem for the parent. 361 S.W.3d at 738. The same is true here.

Second, the additional evidence of indigence we cited in *J.M.* came from matters introduced at trial. 361 S.W.3d at 736 (Department's exhibit 65); *id.* at 738 (testimony regarding Lone Star Card). Here, the father's testimony was replete with references to the couple's financial difficulties, including the lack of a car. He testified his wife was in jail on theft by check charges, and that he would "bail her out" when he was next paid. Written pre-trial reports to the court also show the couple lived with the mother's grandmother and then the father's sister until the father began work for a feedlot near Dimmitt which provided them housing. Until that time, the record also consistently reflects both the father and the mother were unemployed.

The Department contends the evidence of the parents' drug use during the pendency of the case indicates they were not indigent. We disagree, and find the contention no more than speculation.

The Department also argues the mother never responded in opposition to termination of her parental rights, unlike the parent in *J.M.*, who was brought from jail to appear at the termination hearing. 361 S.W.3d at 735. But the evidence before the court was unmistakable that the mother, like the father, opposed termination of their parental rights. His testimony made her desires clear, and we think on this record her opposition to termination never was in question.[4] *See J.M.*, 361 S.W.3d at 738 (no "magic words" required to respond in opposition to termination).

We find the Department's argument regarding the mother's opposition to termination particularly harsh in view of the procedure employed at trial with regard to the mother. The Department advised the court at the outset of the proceeding that the mother was "in jail here in Dimmitt" after having been "discharged for completing" inpatient treatment in Abilene only the day before. Particularly given the apparent ease of doing so, what we said in *J.M.* is equally applicable here, "In consideration of the recognized constitutional dimensions of the parent-child relationship, we see no reason why the trial court should not make an inquiry into whether [the mother] desired to proceed without benefit of counsel." 361 S.W.3d at 739.

---

[4] At what point in time the focus of the litigation became termination is not fully clear. By October 2013, the Department's permanency goal had shifted to adoption. But as noted the Department's live petition, filed within thirty days of trial, alleged reunification as a Department objective.

10

The mother's first issue is sustained. Because our disposition of this issue requires remand and a new trial as to the mother and as the mother's second issue seeks no greater relief than a new trial, discussion of her second issue is unnecessary to our disposition. *See* TEX. R. APP. P. 47.1.

The Father's Issues

*Failure to Appoint Counsel*

In his first issue, the father argues the trial court erred by failing to appoint counsel for him at some unspecified stage of the proceedings. As noted, the father appeared for the May 1 hearings represented by retained counsel. Even assuming the trial court abused its discretion by not previously appointing counsel for the father, we are not shown any resulting harm to the father that probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1). His first issue is overruled.

*Ineffective Assistance of Retained Counsel*

By his second issue the father argues his attorney rendered ineffective assistance by, among other failures, failing properly to seek a continuance of the final hearing. In a footnote in its brief, the Department questions whether the father may assert his retained attorney rendered ineffective assistance.

Our supreme court has found the statutory right to counsel for indigent parents[5] "embodies the right to effective counsel." *In re B.G.,* 317 S.W.3d 250, 253-54 (Tex.

---

[5] TEX. FAM. CODE ANN. § 107.103(a) (West 2014) (When a governmental entity seeks termination of the parent-child relationship, the trial court shall appoint an

2010); *In re M.S.,* 115 S.W.3d 534, 544 (Tex. 2003). If court-appointed counsel in a parental-rights termination case is ineffective, the parent may challenge an order of termination on the ground of ineffective assistance. *In re M.S.,* 115 S.W.3d at 544. But the court has not extended the rule to cases involving the purported ineffectiveness of retained counsel, and we will not so extend it in this case. *See In re V.G.,* No. 04-08-00522-CV, 2009 Tex. App. LEXIS 6929, at *35-36 (Tex. App.—San Antonio Aug. 31, 2009, no pet.) (mem. op.) (citing *Martin v. Martin,* No. 04-04-00828-CV, 2005 Tex. App. LEXIS 10731, at *3-4 (Tex. App.—San Antonio Jul. 6, 2005, no pet.) (mem. op.)) (concluding an ineffective assistance of counsel claim does not exist in termination cases when counsel in retained); *Maki v. Anderson,* No. 02-12-00513-CV, 2013 Tex. App. LEXIS 10353, at *17 (Tex. App.—Fort Worth Aug. 15, 2013, pet. denied), *cert. denied,* 190 L.Ed.2d 67, 2014 U.S. LEXIS 6236, 83 U.S.L.W. 3186 (U.S., Oct. 6, 2014) (same in protective order case). The father's second issue is overruled.

## Conclusion

We reverse and remand the portion of the trial court's order pertaining to the mother for further proceedings consistent with this opinion. TEX. R. APP. P. 43.2(d). Any new trial of the Department's case against the mother must commence within 180 days of the date our mandate issues. TEX. R. APP. P. 28.4(c).

---

attorney ad litem to represent the interests of an indigent parent of the child who responds in opposition to the termination).

We affirm the trial court's order as it pertains to the father. TEX. R. APP. P. 43.2(a).


James T. Campbell
Justice