

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00350-CV

IN THE INTEREST OF A. R., A CHILD

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 17-09-25164, Honorable Kelley Tesch, Presiding

January 28, 2019

MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Appellant R.T. ("the father") appeals the trial court's final order terminating his parental rights to his son, A.R.[1]  Appellee is the Texas Department of Family and Protective Services.  Finding the trial court abused its discretion by failing to continue the final hearing and the error was not harmless, we will reverse the order terminating the

---

[1] To protect the child's privacy, we will refer to the parents as "the father" and "the mother" and the child by initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b).  The parental rights of the mother to A.R. also were terminated but the mother did not appeal.

father's parental rights and remand the Department's case against the father for a new trial.

## Background

According to A.R.'s mother's final hearing testimony, she and the father began a relationship in 2013. In December 2016, the mother became pregnant with A.R. A.R. was born September 11, 2017, in Levelland, Texas. The father then lived in Grand Rapids, Michigan, and stated at the final hearing he was not aware of the child's birth.

A Department caseworker testified that when A.R. was born the Department received a referral alleging neglectful supervision of A.R. by the mother. The Department's investigation confirmed the mother's recent drug use. At that point, an agreed parental safety placement of A.R. with his maternal aunt and uncle was completed. Drug test results of the mother and A.R. showed both were positive for amphetamine and methamphetamine.

On September 15, the investigator spoke with the father. He expressed the desire to be part of A.R.'s life and indicated he intended to complete Department services if necessary. The Department's evidence further indicated on November 2 the father agreed, if his paternity was established, to decide whether to participate in Department services. The Department, on establishment of the father's paternity, intended to develop a new family plan of services.

Regarding A.R., the Department filed a suit affecting the parent-child relationship on September 26, 2017. Among other things, the petition requested judicial determination of the father's paternity and, if established, termination of his parental rights. On October

12, 2017, the trial court conducted a show cause hearing. The resulting order, signed the same day, recited the father "was not notified, and did not appear." The order did not mention appointment of an attorney for the father. Also on October 12, the court signed an order that specified the parental actions necessary for return of A.R. At the final hearing, the caseworker testified she could not recall reviewing the order with the father or forwarding him a copy.

The trial court required the father to submit to genetic testing in an order signed January 29, 2018. By order signed April 3, 2018, the court established the father's paternity of A.R.

At the final hearing, the father stated about a month after the paternity determination he was arrested in Michigan on a drug possession charge.

An August 7, 2018 permanency hearing order recited the father and the mother appeared for the hearing through Liza Trevino, the attorney previously appointed to represent the mother. The recital was an apparent error. A "stipulation and agreement" signed August 31 following a settlement conference stated that Trevino appeared for the mother but the father appeared by telephone. Final hearing occurred on September 13, 2018. The father did not appear for announcements. Trevino announced, despite confusion at the settlement conference, she was not, and had never been, the father's attorney in the case.

Trevino further announced it was her understanding the father intended to appear by telephone and ask for an attorney or a continuance. In response to the court's inquiry regarding the father's intended telephone appearance, a Department caseworker stated

the father called her earlier that morning and said he was "only allowed a 9:00 o'clock phone visit . . . ." The court stated if the father called back during the final hearing, he could appear by telephone "for as long as he's available." The final hearing then began with the Department calling the caseworker as its first witness.

Not long into the worker's testimony the father telephoned the worker and was permitted to speak in open court, apparently through a cellphone's speaker. When asked by the court if he wished to make a motion, the father asked for "an extension for participating." When asked by the court how long he could remain on the telephone, the father stated the jail permitted him two twenty-minute calls. The court deferred ruling on the father's request for "an extension" until later in the hearing. The Department's direct examination of the worker resumed.

Later in the worker's testimony, as the Department offered into evidence a family service plan unsigned by the father, the reporter's record states, "[r]ecorded phone voice: "One minute remaining.'" The court and the parties made no response and the document was admitted. Shortly thereafter the reporter's record reflects the following:

(Phone beeping noise.)

The Court: Can I give the phone back to the Worker to monitor for the next call in? I don't know if he's going to call back immediately or if he's going to call back in a little bit.

Within the space of eight lines of question and answer, the reporter's record reflects, "[father] appearing again by phone." The Department's questioning then turned to its case against the father.

When the Department passed the worker for cross-examination the court allowed the father to go first. He responded to the court, "I really couldn't hear everything that was going on just a second ago. Sounded like the phone was covered up or something, but I heard my name and then heard something about am I a threat to the child, and I heard something about abuse. I would like to know what was said." The court then directed the worker to explain why the father was a danger or threat to the child. The father's disagreement with the worker's response prompted an admonishment from the court that he was representing himself and would have a chance to testify, possibly out of order, "before you run out of the minutes." While attempting to question the worker, the father asked for the opportunity to work services and an extension.

At that point, mindful of the father's depleting telephone time, the court placed him under oath with the instruction that he could give his version of what should happen in the case. In the narrative testimony that followed, the father again requested an extension. As the court asked the father questions about his whereabouts on the date of A.R.'s birth and whether he was notified of the birth, the record again reports an electronic notice on the telephone that the father had one minute remaining. The father responded he would attempt to gain additional minutes and call back. Once again, he requested the court to grant an extension. As the father responded to a question about his work before being incarcerated the record records, "Phone beeping noise." At that, the mother's attorney began cross-examination of the worker. The father did not call back and the court did not attempt to contact him. Rather, the final hearing continued with no further participation by the father.

5

After the parties cross-examined the worker and the Department finished redirect examination, the mother and A.R.'s aunt, with whom he was placed, testified. Following presentation of the evidence the court denied the father's request for an extension.

On September 18, 2018, the court signed a final order which terminated the father's parental rights,[2] and appointed the Department A.R.'s permanent managing conservator. The final order recited the father appeared pro se by telephone and announced ready, but elsewhere it ordered that Trevino was relieved of all duties to the father on a finding of good cause.[3]

On September 25, the father filed by mail a hand-written, pro se notice of appeal. In the document he alleged various facts which were contrary to the Department's case against him and asked the trial court for an opportunity to prove his claims. The court then appointed appellate counsel for the father. That attorney filed what amounted to an amended notice of appeal.[4] Among other things, the unchallenged document recited that the father was "presumed indigent and may proceed without paying costs . . . ."

---

[2] The court based its judgment terminating father's parental rights on findings under predicate grounds (D),(E),(N), and (O) and that termination was in the best interest of A.R. TEX. FAM. CODE ANN. § 161.001(b)(1)(D),(E),(N), & (O),(2) (West Supp. 2018).

[3] Of course the father did not announce ready for trial and as noted, Trevino announced before evidence began that she did not represent the father, and had not ever. Given this announcement, and because the record contains no indication she took any part in the final hearing on the father's behalf, we find Trevino did not appear as attorney ad litem for the father at the final hearing.

[4] *See* TEX. R. APP. P. 25.1(g).

Analysis

Through his first issue, the father argues the trial court abused its discretion by failing to grant his requested "extension." By its brief, the Department limits its discussion of the father's first issue to the question whether the trial court erred by failing to grant an extension under Family Code section 263.401(b). While we agree that question is included within the father's assignment of error, we do not read his issue complaining of the trial court's denial of his "request for an extension of time for the final hearing" to be so limited. *See* TEX. R. APP. P. 38.1(f) (requiring issue or point in appellate brief to be treated as covering every subsidiary question that is fairly included); *In re M.N.,* 262 S.W.3d 799, 801 (Tex. 2008) (applying, in termination appeal, TEX. R. APP. P. 55.2(f)); *In re B.L.R.P.,* 269 S.W.3d 707, 710-11 (Tex. App.—Amarillo 2008, no pet.) (applying *In re M.N.* in termination appeal). Nor do we consider that the father's use, as a layman, of the word "extension" during his requests at trial to be limited to the statutory six-month extension under section 263.401(b). It seems to us he clearly sought postponement of the final hearing by his requests.

Parental rights are of constitutional dimension and are "far more precious than property rights." *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985) (quoting *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1976)). Because a final order of termination is complete, final, and irrevocable, termination proceedings must be strictly scrutinized. *Williams v. Williams,* 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied) (citing *Holick,* 685 S.W.2d at 20-21).

7

A motion for continuance must be verified or supported by affidavit. TEX. R. CIV. P. 251. The father did not present a written motion for continuance at the hearing. Indeed nothing of record shows how that was possible, but while under oath he requested an extension "so that when I get out of here, I can establish roots, working and show that I want to be a part of [A.R.'s] life . . . . I would never abandon my child." Thereafter, before his telephone time expired, the father twice asked for an extension. We find under the extreme circumstances shown here the father presented a sworn request for a continuance, supported by facts, which the trial court denied, albeit after the father's telephone time had expired. *Cf. Villegas v. Carter,* 711 S.W.2d 624 (Tex. 1986) (finding it unrealistic to apply presumption of no abuse of discretion, arising because lay litigant's motion for continuance was not sworn, when lay litigant's attorney was permitted to withdraw two days before trial through no negligence of client).[5]

We review an order granting or denying a motion for continuance for abuse of discretion. *In re J.H.M.,* No. 07-07-0109-CV, 2009 Tex. App. LEXIS 9886, at *30 (Tex. App.—Amarillo Dec. 29, 2009, no pet.) (mem. op.) (citing *Villegas,* 711 S.W.2d at 626). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles. *In re K.B.,* No. 07-16-00438-CV, 2017 Tex. App. LEXIS 3227, at *5 (Tex. App.—Amarillo Apr. 12, 2017, pet denied) (mem. op.)).

At no time did the trial court inform the father of his right to be represented by an attorney and the right to court-appointed counsel if indigent. TEX. FAM. CODE ANN.

---

[5] The record does not show the father's lack of counsel at the final hearing was due to his own negligence or fault.

§ 107.013(a-1) (West Supp. 2018) (providing in a termination suit brought by a governmental entity "if a parent is not represented by an attorney at the parent's first appearance in court, the court shall inform the parent of the right to be represented by an attorney; and if the parent is indigent and appears in opposition to the suit, the right to an attorney ad litem appointed by the court"). The father initially appeared in the case by telephone at the final hearing. The record makes clear he opposed the Department's termination suit. Following the final hearing, the trial court appointed appellate counsel for the father and in so doing necessarily found him indigent. TEX. FAM. CODE ANN. § 107.013(a)(1) (providing in a termination suit brought by a governmental entity "the court shall appoint an attorney ad litem to represent the interests of an indigent parent of the child who responds in opposition to the termination . . . ."). His appellate attorney noted the presumption of continuing indigency on appeal in an amended notice of appeal.

Without counsel, the father's participation in the final hearing was constrained to two, twenty-minute blocks of telephone time through equipment which hindered his ability to hear the testimony. After the father's telephone time expired, the presentation of evidence continued including the mother's testimony which was, at times, adverse to the father. In the father's absence there was, of course, no opportunity for cross-examination of the mother or the other witnesses or presentation of rebuttal evidence or an opportunity to counter the Department's closing argument which highlighted the mother's testimony adverse to the father.

When the father appeared by telephone at the final hearing without a lawyer the trial court immediately should have provided him the notice required by section 107.013(a-1) and continued the hearing to determine indigency, appoint counsel on a

9

showing of indigency, and afford counsel a reasonable time to prepare for the resumption of trial. Thus we find the trial court abused its discretion by failing to continue the final hearing. *Cf. In re J.M.,* 361 S.W.3d 734, 739 (Tex. App.—Amarillo 2012, no pet.) (finding trial court committed reversible error by failing to appoint counsel for indigent parent who did not request appointment of counsel at or before final hearing but appeared in opposition to the Department's suit for termination). The error was not harmless because it caused the rendition of an improper judgment or probably prevented the father from properly presenting his case on appeal. TEX. R. APP. P. 44.1(a)(1),(2).

The father's first issue is sustained. Review of his second issue is unnecessary to the disposition of this appeal. TEX. R. APP. P. 47.1.

Conclusion

We reverse the final order as to the father and remand the case for a new trial of the Department's case against him. TEX. R. APP. P. 43.2(d). Any retrial of this case must commence no later than 180 days after this court's mandate issues. TEX. R. APP. P. 28.4(c).

James T. Campbell
Justice