Memorandum Opinion by Justice Longoria
Appellant J.C. challenges the trial court's order terminating her parental rights to B.C., a minor.[1] By three issues, J.C. claims that: (1) she was not given proper notice of the trial; (2) she was wrongfully denied representation by counsel; and (3) the evidence is legally and factually insufficient to support the trial court's finding that it is in the best interests of B.C. to terminate the parent-child relationship. See TEX. FAM. CODE ANN. § 161.001(b)(2) (West, Westlaw through 2017 1st C.S.); TEX. R. CIV. P. 245. We reverse and remand in part and we affirm in part.
I. BACKGROUND
On August 1, 2017, the Department of Family and Protective Services ("the Department") filed its original petition requesting emergency removal of B.C. and her brother B.T. from J.C.'s home.[2] B.C. was five years old at the time and B.T. was four. The Department alleged that: (1) drugs were used and sold in the home; (2) the home lacked running water and light; and (3) there were ongoing domestic violence issues in the home. At a hearing on August 10, 2017, Department investigator Crystal Krueger testified concerning the initial referral to the Department. She testified that there was no running water in the home, there was no light, and she confirmed that there were concerns of domestic violence. She also testified that methamphetamines were used in the home. J.C. did not contest the removal of the children from her home, and the Department *434 was named the temporary managing conservator of B.C. The trial court informed J.C. that if she submitted an affidavit of indigency, she would be entitled to a court-appointed attorney.
At a subsequent hearing on September 11, 2017, the family plan of service was adopted, and a hearing schedule was created. The hearing schedule listed the dates and times for the remaining permanency hearings, including the date of the final bench trial to be held on July 9, 2018. Every party present, including J.C., signed the hearing schedule. J.C. testified that she understood that she might have her parental rights terminated if she didn't complete the service plan.
On December 12, 2017, the initial permanency hearing was held, with J.C. present. She had begun some of the services on the plan but also tested positive for marijuana. The court informed J.C. of the next hearing on February 1, 2018. At this hearing, the court discussed whether J.C. was making enough progress to avoid termination; J.C. did not attend.
The next hearing was held on April 5, 2018, with J.C. present. The court was informed that B.C.'s third placement with a maternal cousin was going to need to change soon due to medical issues. The court scheduled an additional review hearing for May 17, 2018. At this hearing, the parties were reminded of the pretrial permanency hearing on July 3, 2018. Permanent managing conservatorship of B.T. was transferred to a paternal aunt, leaving only B.C. in this case.
J.C. was present for the June 7, 2018 hearing. According to testimony from caseworkers, her progress on the family service plan had completely stagnated. The trial court reprimanded J.C. for not making the family plan of service a priority; for example, the trial court was concerned with J.C.'s failure to submit for drug tests on multiple occasions. The trial court reminded everyone present that they were set for trial in less than thirty-two days. All the parties were once again reminded of the next hearing on July 3, 2018.
J.C. did not appear at the July 3 hearing. Because of J.C.'s lack of progress on the service plan, the Department was now requesting termination of her parental rights. At this point, B.C. was in her fourth placement home with G.G., a maternal third cousin.
On July 9, 2018, the bench trial was held. J.C. did not appear, even though caseworker Sarah Wallace testified that she had called J.C. to remind her of the bench trial. Krueger once again testified concerning the lack of utilities in the home and the use and trafficking of methamphetamines in the home. Caseworkers spoke with the neighbors and confirmed frequent reports of domestic abuse concerning J.C.'s boyfriend. Lab tests showed that J.C. tested positive for methamphetamines, amphetamines, and marijuana around the time the children were removed from the home. Krueger also testified that when B.C. was removed from the home, she had extensive head lice and was in dire need of a bath and clean clothes.
Wallace testified concerning J.C.'s performance on the family plan of service. The service plan's primary goals were for J.C. to maintain sobriety, employment, and housing. However, Wallace testified that J.C. couldn't maintain employment, which led to J.C. moving back and forth between living with different relatives. She testified that J.C. tested positive for methamphetamines, amphetamines, and marijuana in July of 2017. She tested positive for methamphetamines and marijuana in September of 2017. She did have a negative drug test result in April of 2018; however, J.C. failed to complete her drug tests in November, *435 December, and May. Wallace averred that J.C. failed to consistently visit B.C., excluding the month J.C. was incarcerated.
G.G. testified that as a distant cousin of B.C., she did not have a lot of history or experience with B.C.'s immediate family. She related that J.C. appeared to be under the influence of drugs during J.C.'s last visitation with B.C. According to G.G., every time a visitation was scheduled, J.C. would either become unavailable or not show up. G.G. testified that it was "damaging" to B.C. to have her mother constantly not show up for visitation. Caseworker Windy Luna testified that in her opinion, termination was appropriate and in the best interests of B.C. The trial court found that termination was in the best interest of B.C. and terminated J.C.'s parental rights pursuant to parts (D), (E), (O), and (P) of subsection 161.001(b)(1) of the Texas Family Code. See TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P).
On August 17, 2018, a hearing was held before the trial court to appoint J.C. an attorney for her appeal, and the following exchange occurred:
[Trial Court]: All right. [J.C.], you were brought here today because you came by after your trial and requested a [sic] attorney.
[J.C.]: Yes, Ma'am.
[Trial Court]: And what is going on? Why now?
[J.C.]: Because I lost my rights.
[Trial Court]: Yes, ma'am. You were advised that was possible at every hearing and you didn't show up for your trial.
[J.C.]: Because I was advised that was going to happen and I didn't want to hear it.
[Trial Court]: I can't hear you.
[J.C.]: I was advised that that was going to happen, and I didn't want to hear it.
[Trial Court]: I don't understand what you are saying.
[J.C.]: They told me that I was going to lose my rights.
[Trial Court]: So you just chose not to show up to trial?
[J.C.]: I already knew. I had already knew [sic] I was going to lose my rights. I didn't want to come down here in front of everybody.
The court considered J.C.'s indigency application and appointed her counsel for her appeal. This appeal ensued.
II. FORTY-FIVE DAY NOTICE
In her first issue, J.C. contends that she was denied due process under the Fourth and Fifth Amendments because she was not given reasonable notice of the date of the bench trial at least forty-five days in advance of the trial. See U.S. CONST. amends. IV, V ; TEX. R. CIV. P. 245.
A. Standard of Review and Applicable Law
Rule 245 of the Texas Rules of Civil Procedure requires parties to be given notice of the final trial date at least forty-five days in advance. Id. The notice required by Rule 245 "is mandatory and involves the constitutionally protected right of due process." In re I.L.S. , 339 S.W.3d 156, 159 (Tex. App.-Dallas 2011, no pet.) ; see Blanco v. Bolanos , 20 S.W.3d 809, 811 (Tex. App.-El Paso 2000, no pet.) ("A trial court's failure to comply with the rules of notice in a contested case deprives a party of the constitutional right to be present at the hearing.").
*436 B. Discussion
On appeal, J.C. argues that there is no evidence that she was ever informed of the specific trial date on July 9, 2018. She claims that the trial court only vaguely mentioned a possible trial setting in July. However, the record clearly establishes that J.C. was informed of the date of the bench trial well in excess of the minimally-required forty-five days. At the hearing on September 11, 2017, J.C. signed and received a copy of the hearing schedule, which listed the date of the bench trial. Furthermore, J.C.'s remarks at the post-trial hearing to appoint an attorney for the appeal indicated that she had received notice and was aware of the date of the bench trial but simply decided not to appear. We find that J.C. received proper notice of the final trial date. See In re I.L.S., 339 S.W.3d at 159. We overrule J.C.'s first issue.
III. COURT-APPOINTED ATTORNEY
In her second issue, J.C. argues that she was wrongfully denied the assistance of counsel.
A. Standard of Review and Applicable Law
An indigent's right to counsel is not absolute. See In re J.R.P. , 55 S.W.3d 147, 150 (Tex. App.-Corpus Christi 2001, pet. denied) (citing Lassiter v. Dept. of Social Svcs. of Durham Co., 452 U.S. 18, 24-32, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) ). "[T]he due process clause does not require appointment of counsel in every parental termination proceeding, and the decision whether due process calls for appointment of counsel is best left to the trial court." In re M.J.M.L. , 31 S.W.3d 347, 354 (Tex. App.-San Antonio 2000, pet. denied).
Section 107.013 of the Texas Family Code states that the trial court shall inform each parent not represented by an attorney of their right to be represented by court appointed counsel if they are in opposition and indigent. See TEX. FAM. CODE ANN. § 107.013 (West, Westlaw through 2017 1st C.S.). Several courts have noted that indigent parents are entitled to the appointment of counsel even if they never affirmatively request it. See In re E.A.F. , 424 S.W.3d 742, 747 (Tex. App.-Houston [14th Dist.] 2014, pet. denied) ("The appointment of an attorney ad litem is required [in a parental termination case] whether or not the indigent parent requests an attorney."); In re J.M. , 361 S.W.3d 734, 738-39 (Tex. App.-Amarillo 2012, no pet.) (holding that the trial court erred by not appointing counsel for the indigent parent when the parent appeared in opposition to the termination but did not affirmatively request counsel); In re A.V.M. , No. 13-12-00684-CV, 2013 WL 1932887, at *7 (Tex. App.-Corpus Christi May 9, 2013, pet. denied) ("The statute does not include the requirement that an indigent parent affirmatively request appointment of counsel when it appears that the parent opposes the termination suit.").
On review, we determine if the trial court's action was arbitrary and in violation of the party's due process rights. See In re M.J.M.L. , 31 S.W.3d at 354. It is reversible error to fail to timely appoint counsel for a parent that has requested an attorney and filed an unchallenged affidavit of indigency. See In re C.D.S. , 172 S.W.3d 179, 186 (Tex. App.-Fort Worth 2005). It is also reversible error to fail to admonish indigent parents about their right to be appointed an attorney. See In Interest of A.J. , 559 S.W.3d 713, 722 (Tex. App.-Tyler 2018, no pet.).
Discussion
J.C. argues on appeal that she never expressly waived her right to appeal *437 and that she was thus entitled to a court-appointed attorney. The Department contends that J.C. never triggered her right to an attorney. We agree with J.C.
At the hearing in August of 2017, J.C. was clearly and thoroughly informed of her right to counsel. The trial court gave the following admonishment:
You've the right to get your own lawyer. If you cannot afford an attorney because this is a case that might involve the Department seeking to have permanent custody of your children or seeking to terminate your parental rights, depending on how it turns out later in the case, you have the right to request an attorney to be appointed to present you. To do that you have to fill out some forms with the district clerk and the Judge has got to look at them to determine whether or not you're truly indigent and if you're truly indigent, the judge is required to appoint an attorney to represent you. Does everybody understand you've got the privilege?
It is also true that she never filed an affidavit of indigency. However, at the adversary hearing, she testified that she wanted her children back. This is sufficient to constitute opposition to the Department's petition to terminate parental rights. In re J.M. , 361 S.W.3d at 738 ("There appear to be no magic words that are required to be in opposition to a request for termination."); see In re T.R.R. , 986 S.W.2d 31, 37 (Tex. App.-Corpus Christi 1998) (concluding that parent's statement "I want my rights" was sufficient to trigger a required inquiry into indigency status.).
Furthermore, there was sufficient indication in the record that J.C. was indigent such that the trial court should have conducted further inquiry into her status. In re J.M. , 361 S.W.3d at 738-39. In both the removal affidavit and at the adversary hearing, there was evidence that J.C.'s home lacked running water and power. Later in the proceedings, J.C. was working at a fast food chain and attempting to secure her own housing while living with a relative. In In re T.R.R. , 986 S.W.2d at 37, this Court concluded that a parent should have been appointed counsel where there was evidence that she was receiving public assistance.
Because the record supports that J.C. was indigent and responded in opposition to termination, she was entitled to court-appointed counsel. Unless, J.C. waived that right, it would have been error for the trial court to not appoint counsel. See In re E.A.F. , 424 S.W.3d at 747 ; In re J.M. , 361 S.W.3d at 738-39. Here, there is nothing in the record indicating that J.C. was waiving her right to counsel and wished to proceed pro se. Accordingly, we sustain J.C.'s second issue and find that the trial court erred by proceeding without appointing her an attorney. Because we sustain J.C.'s second issue, we do not need to address her third issue related to the trial court's best interest finding. See TEX. R. APP. P. 47.1.
IV. CONCLUSION
We reverse the portion of the judgment terminating J.C.'s parental rights and remand the case to the trial court for appointment of an attorney ad litem consistent with section 107.013(a) of the Texas Family Code and remand for a new termination hearing. We affirm the remainder of the judgment.

To protect the identity of the children, we refer to the children and their parents using aliases. See Tex. R. App. P. 9.8(b).

J.C. does not challenge the termination of her parental rights to B.T. in this appeal.